**RICHMOND TENANTS ORGANIZA-
TION, INC., et. al., Plaintiffs,**

v.

**RICHMOND REDEVELOPMENT AND
HOUSING AUTHORITY, Defendant.**

Civ. A. No. 3:90CV00576.

United States District Court,
E.D. Virginia,
Richmond Division.

Dec. 3, 1990.

David Brian Rubinstein, Susan Jeanne Stanford Stoney, Henry McLaughlin, III, Richmond, Va., for plaintiffs.

George Keith Martin, William G. Broaddus, McGuire, Woods, Battle & Boothe, Arnold Reginald Henderson, V, Roger Lee Gregory, Wilder & Gregory, Richmond, Va., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

RICHARD L. WILLIAMS, District Judge.

## INTRODUCTION

Plaintiffs, who are tenants of public housing operated by the Richmond Redevelopment and Housing Authority (RRHA), have sued for declaratory and injunctive relief. Plaintiffs challenge various provisions of a new dwelling lease adopted by RRHA. Plaintiffs contend that several changes in the lease were not properly noticed, and that several terms are "unreasonable" under 42 U.S.C. § 1437d(*l*)(1).

On October 31, 1990, this Court granted a preliminary injunction enjoining implementation of the new lease. On November 20, 1990, the Court denied Plaintiff's motion for class certification, finding that such certification was unnecessary. Trial on the merits took place on November 27 and 28, 1990.

As detailed below, the Court finds that the various lease modifications were implemented by RRHA in an attempt to stem the rising tide of crime and violence in Richmond public housing. The widespread presence of drugs and guns have created an atmosphere of fear and intimidation which now permeates the public housing developments. RRHA has taken several steps to control crime in its developments, one of which was the modification of certain lease terms. The Court finds that these modifications were a part of a good faith effort to improve the safety and quality of life in public housing.

■ The United States Housing Act, 42 U.S.C. § 1437, et seq., provides that local housing authorities should be given maximum authority to administer programs in accordance with local needs and conditions. Therefore this Court will give RRHA commissioners considerable latitude when they take actions designed to address local concerns. Nonetheless, both Congress and Housing and Urban Development (HUD) have placed limitations upon the local authority's power. One of these limitations is the statutory decree that public housing leases contain no "unreasonable" terms.

■ Because this is a case of first impression, this Court must decide what constitutes an "unreasonable" lease term. The Court interprets this clause to require that lease terms be rationally related to a legitimate housing purpose. In applying this test, the crucible of reasonableness

will be defined by the particular problems and concerns confronting the local housing authority. Lease provisions which are arbitrary and capricious, or excessively overbroad or under-inclusive, will be invalidated.

Viewing the lease modifications collectively, it is clear that RRHA was attempting to remedy the extraordinary crime problem in the development. From the guest limitation to the prohibition of firearms, competent evidence indicates that the new lease terms were designed to reduce crime. Certainly, rational people may differ about the efficacy of gun control or the notice required before commencing an emergency eviction. However, this Court will not substitute its own judgment for that of the housing authority. So long as the lease terms are reasonably related to a housing problem, they will be permitted.

■ Applying this test to the amended lease, portions of two provisions are unreasonable. First, provision 5(v) requires that tenants "refrain from the illegal use, sale or distribution of drugs and alcoholic beverages on or off the premises." Although this provision has many reasonable applications, they are covered by other lease provisions. Section 5(t) prohibits the use and/or possession of illegal drugs on Management's property. Section 5(m) requires that tenants "refrain from illegal or other activity which impairs the physical or social environment of the development."

Plaintiffs argue, and Defendant concedes, that provision 5(v) makes misdemeanor alcohol or marijuana convictions a material breach of the housing lease. Although the record indicates that "nip joints" on or near RRHA developments are a problem, there is no evidence that off-premises alcohol and marijuana misdemeanor behavior concerned the commissioners.

Moreover, all the voiced concerns related directly to the physical or social environment of the development, a problem that is adequately addressed by section 5(m) of

the lease. Indeed, trial testimony established that other housing authorities have used provisions similar to 5(m) to evict tenants for conduct which occurred off the housing premises.

Furthermore, trial testimony revealed that minor infractions involving the use or possession of alcohol or marijuana are treated with extreme leniency by the courts. In contrast to the minimal fines imposed, potential eviction from public housing is an excessively severe sanction. It is unreasonable to make misdemeanors, even if repeated, grounds for eviction, when the offense bears no relation to the housing development. For these reasons, the words "or off" will be severed from provision 5(v).[1]

■ Similarly, section 5(s), which prohibits possession of weapons, is well intended but overly broad. Expert testimony was presented on both sides of the gun control issue. This Court finds that elimination of guns and firearms from public housing is rationally calculated to reduce the crime and violence which plague public housing. Furthermore, the Court is persuaded that firearms which have been made inoperable pose a threat to safety. Therefore the prohibition of guns, firearms (operable or inoperable), nunchucks, or similar instruments, blackjacks and explosive devices, is reasonable.

The wording of section 5(s) is broader, however, since it prohibits "possession of any weapon of any type." Trial testimony suggests that this language may be applied to prohibit possession of ceremonial swords, antique tomahawks, and the like. There is no showing that these "weapons" pose any threat to the housing community. All the testimony at trial focused on the danger posed by firearms. Moreover, there has been no showing that RRHA must eliminate all weapons in order to effectively eliminate firearms.

Because almost any item can be deemed a "weapon", the Court finds that the

---

1. The scope of this holding should not be exaggerated. If a tenant engages in illegal activities involving drugs or alcohol, whether on or off premises, the lease is breached if the social environment is impaired by this behavior.

phrase "weapon of any type" can potentially be applied in an arbitrary or discriminatory manner. In the absence of any evidence that this wording is necessary, the Court finds that the section 5(s) is overly broad and therefore unreasonable. Provision 5(s) is reasonable if the phrase "weapon of any type" is severed. Correcting for grammar, section 5(s) after severance reads: "To refrain from the use and/or possession on Management's property of guns, firearms (operable or inoperable), nunchucks, or similar instruments, blackjacks and explosive devices."

With these two exceptions, the Court finds that the modified lease terms are reasonable. As detailed below, the Court also finds that the lease amendments were enacted after proper notice and adequate opportunity to comment. In addition to the findings below, the stipulations of the parties are incorporated by reference.

## FINDINGS OF FACT

*Parties*

1. Defendant Richmond Redevelopment and Housing Authority (RRHA) is a political subdivision of the Commonwealth of Virginia which owns and operates approximately 4,400 low-income public housing units in the City of Richmond. There are approximately 14,000 resident in RRHA housing. RRHA is a public housing authority (PHA) under federal law. RRHA's policy is established by a Commission consisting of five members, three of whom are black and two of whom are white.

2. Plaintiff Richmond Tenants Organization, Inc. (RTO) is a corporation which consists of RRHA tenants. RTO has the authority to represent the tenants vis-a-vis RRHA.

3. Each individual Plaintiff and the overwhelming majority of the members of RTO were tenants of RRHA as of August 31, 1990.

*Background to Lease Changes*

4. In 1977, RRHA adopted a standard dwelling lease ("old lease") after a comment period and negotiations with RTO. This lease, which is Defendant's Exhibit 3,

has been in effect continuously since its adoption.

5. There is a waiting list of persons who wish to live in RRHA housing. Some tenants have no alternative to public housing except homelessness.

6. In the past decade there has been a marked increase in crime in RRHA housing and Richmond generally. In 1989, there were 101 murders in the City of Richmond. Testimony of Dr. Alan V. Barrett.

7. RRHA tenants are the victims of an extraordinarily high incidence of crime, much of which is connected to illegal drug traffic. The murder rate in RRHA housing is very high. Tenants are routinely intimidated by gunfire and the presence of youths with guns. Testimony of Dr. Barrett and Thomas G. Edwards.

8. As early as 1984 or 1985, some RRHA Commissioners considered modifying the old lease to address the crime problem. Testimony of Earnest C. Vaughan, Jr., Esq.

9. The decision of the Commissioners to modify the lease terms was motivated by a desire to provide decent, safe, and sanitary dwellings for families of lower income. Testimony of Ernest Vaughan and Louise C. Toney.

10. Adoption of the new lease terms was motivated by a desire to combat the increasing level of crime, not to avoid legal liability. Testimony of Ernest Vaughan and Louise Toney.

11. RRHA has taken other actions to decrease crime, including educational, sports, cultural, human services, training, employment, and outreach programs for RRHA residents. Defendant's Exhibit 1.

12. RRHA also sought and obtained funding for the Gilpin Court Model Housing Project, a drug prevention, education, and treatment program for youth and adults. Defendant's Exhibit 2.

*Implementation of the New Lease*

13. On April 10, 1990, Keith Martin, counsel for RRHA, sent a draft of a new lease, along with an explanatory letter, to

Henry W. McLaughlin, III, counsel for RTO. Plaintiffs' Exhibit 2.

14. On May 16, 1990, representatives of RTO met with representatives of RRHA to discuss the new lease. RRHA distributed copies of the draft, as well as Martin's April 10, 1990 letter to McLaughlin. Stipulation 14.

15. On May 19, 1990, RTO held its annual meeting. Richard Gentry, executive director of RRHA, spoke to tenants regarding the proposed lease. Stipulation 15.

16. On May 25, 1990, RRHA sent a notice to each tenant informing them that lease changes were proposed, and that 30 days were provided for written comments to the lease. During the 30 day comment period, numerous tenant councils met to discuss the lease modifications. Stipulations 17, 18.

17. During the comment period, 89 tenants provided handwritten comments and several organizations provided comments. Stipulations 21, 22.

18. Copies of the comments were sent to the RRHA commissioners. At least two commissioners read every comment presented. The commissioners carefully considered the comments. The commissioners were not affected by the characterization of comments as favorable or unfavorable. Testimony of Commissioners Vaughan and Toney.

19. On July 12, 1990, the RRHA Board of Commissioners conducted a public hearing on the proposals to modify the lease. The hearing was not required by federal law. Approximately 30 persons attended the meeting. All nine persons who spoke, spoke against the modifications. Stipulations 24, 25.

20. On July 17, 1990, the RRHA Board unanimously adopted the lease amendments. Stipulation 27. Testimony of Commissioner Toney. This lease is Defendant's Exhibit 6.

21. The new lease was to become effective November 1, 1990, for tenants residing in RRHA property as of August 31, and effective September 1, 1990 for tenants moving in after that date.

22. By Order entered on October 31, 1990, this Court enjoined implementation and enforcement of the new lease until trial on the merits. The Final Order entered today dissolves this injunction.

*Sufficiency of Notice*

23. Plaintiffs contend that the notice sent to tenants on May 25, 1990 was deceptive. The Court finds that the notice was not deceptive. Further, any confusion about the meaning of the changes was cured within the comment period, and was therefore harmless. Testimony of Mallisena Harris.

24. Upon review, the Court finds that section 6(h) of the old lease, which requires a written response to requests for alterations, essentially duplicated the protection provided by RRHA procedure 411–3.1. Defendant's Exhibits 3 and 9.

25. Upon review, the Court finds that section 6(p) of the old lease, which requires security on the premises, essentially duplicated the provisions of 6(a) and 6(c), which require that the premises be kept in a "safe condition." Defendant's Exhibit 3.

26. Upon review, the Court finds that section 6(r) of the old lease, which prohibits harassment or retaliation, essentially duplicated the protection afforded under Section 55–248.39 of the Virginia Residential Landlord and Tenant Act.

27. Upon review, the Court finds that section 6(s) of the old lease, which prohibits selective enforcement of the lease terms, essentially duplicated the protection against discrimination found in state and federal law and the protection relating to termination under section 10 of the lease.

28. It is uncontested that each tenant received a complete copy of *all* of the lease modifications, including those allegedly duplicative. Stipulation 17 and Plaintiffs' Exhibit 8.

29. The only evidence of reliance was the testimony of Mallisena Harris. Ms. Harris testified that she did not read a portion of the lease, because of the RRHA statements relating to duplication. However, Ms. Harris admitted that she learned that the clauses were potentially non-dupli-

cative prior to the end of the comment period. Moreover, she stated that she wrote no comment because she relied on RTO to represent her interests. Testimony of Mallisena Harris.

30. Several comments, including that filed by RTO, specifically discussed the duplicative provisions. Plaintiffs' Exhibits 10A–10E.

31. There is no evidence that any party refrained from commenting in reliance on RRHA's categorization of these provisions as duplicative. There is no evidence that RRHA was intentionally deceptive.

32. Plaintiffs also contend that the notice regarding section 5(c), the 10 day guest limitation, was deficient. The copy of the lease modifications circulated to the tenants did not include the 10 day limitation language. Instead, the circulated copy simply deleted all reference to guests in section 5(c). Defendant's Exhibit 4. The old lease provided for "reasonable accommodation for guests." By inference, therefore, the proposed lease which was circulated made *no* reasonable accommodation for guests. Section 5(c) in its final form restores a reasonable accommodation for guests, which is not to exceed 10 days without written permission from Management. Defendant's Exhibit 5. The modification therefore was favorable to the tenants. Plaintiffs have no basis to challenge it.

33. Plaintiffs also challenge the notice provided in connection with section 5(v), which related to alcohol. In the circulated notice, the section referred to drugs. The Court finds that the phrase "and alcoholic beverages" was added to clarify the fact that alcohol is properly classified as a drug.

## REASONABLENESS OF THE SPECIFIC LEASE TERMS

*Notice to Move After Change in Family Status*

34. Section 4(e) of the new lease requires that the tenant move to an appropriate size apartment within the development, within 10 days after receiving written notice. Defendant's Exhibit 6.

35. Apartment vacancies are a concern due to lost revenue and the opportunity they present to crime. Testimony of Dr. Barrett and Thomas Edwards.

36. The 10 day notice provision reduces the loss of income and reduces the risk of crime. Testimony of Edwards.

37. The typical wait between the change in family status and the availability of an appropriately sized apartment is several months. Almost 700 tenants are on a list awaiting transfer. Testimony of Edwards, Stipulation 54.

38. Other housing authorities use similar provisions, with at least one authority providing less than 10 days. Plaintiffs' Exhibit 28, especially p. 14 (Baltimore Authority gives 5 days).

*Trash Citations*

39. Plaintiff has abandoned the contention that this provision is unreasonable. Stipulation 57.

*Emergency Eviction and Property Disposal*

40. Section 10(b)(2) of the new lease requires tenants to vacate the premises and remove their property within a reasonable time, which may be less than 24 hours "depending upon the urgency of the situation in the case of a threat to the life, health or safety of other tenants or Management's employees which time span shall be specified by Management." Defendant's Exhibit 6.

41. This provision is designed to give RRHA the authority to act quickly in order to protect its employees and tenants. Testimony of Edwards.

42. Most public housing leases contain language allowing vacation of the premises "within a reasonable time commensurate with the exigencies of the situation." Plaintiffs' Exhibit 28.

43. There are instances where eviction on less than 24 hours notice is reasonable. Testimony of Edwards.

44. Provisions of the Virginia Residential Landlord and Tenant Act, Va.Code Ann. § 55–248.38:1, adequately protect the tenant in this situation.

*Strict Liability*

45. Section 10(a)(4) of the new lease provides that it is good cause for termination if the "tenant failed to conduct himself and require other persons on the Premises with his consent to conduct themselves in a manner that will not disturb his neighbor's peaceful enjoyment of the premises. If the activity is not criminal and is not willful, then in the event that the breach is remediable and an emergency does not exist, written notice of the breach shall be given and the Tenant shall correct the breach within twenty-one (21) days. Any subsequent breach of a like nature may result in termination." Defendant's Exhibit 6.

46. There is evidence that this provision will increase familial responsibility and may decrease crime. Testimony of Dr. Barrett, Testimony of Joyce Reid.

47. This provision is consistent with many other public and private lease provisions. Plaintiffs' Exhibit 28.

48. The industry standard requires vigilant control of children by the parents. The RRHA provisions are within the general industry standards. Testimony of Mary Ann Russ.

*Guest Accommodation*

49. Plaintiff abandoned at trial the contention that the 10 day limitation on guests without written permission is unreasonable.

*Off–Premises Illegal Use of Drugs and Alcohol*

50. Section 5(v) of the new lease requires that tenants "refrain from illegal use, sale, or distribution of drugs and alcoholic beverages on or off the premises." Defendant's Exhibit 6.

51. Section 5(t) prohibits the use and/or possession of illegal drugs on the property. Section 5(m) requires that tenants "refrain from illegal or other activity which impairs the physical or social environment of the development." Defendant's Exhibit 6.

52. Provisions similar to 5(m) are present in most public housing leases. These provisions have been used by other PHAs to reach conduct which occurs off the premises. Testimony of Mary Ann Russ.

53. Provisions such as 5(v) which prohibit any illegal use of drugs or alcohol, regardless of where such use occurs, are extremely rare, or non-existent, in public housing leases. Testimony of Mary Ann Russ, Plaintiffs' Exhibit 28.

54. Provision 5(v) makes misdemeanor use of alcohol or marijuana a material breach of the lease, regardless of where such conduct occurs. Defendant's Exhibit 6, Testimony of Edwards.

55. RRHA was uncertain when asked how many out-of-state incidents of illegal alcohol or marijuana use would be sufficient to justify eviction. There is considerable subjectivity in applying 5(v). Testimony of Edwards.

56. RRHA commissioners were not concerned with out of state alcohol or marijuana use when they adopted 5(v). Rather they were concerned about "nip joints" which were located on or near the premises. RRHA was only concerned about alcohol use and abuse which occurred *on* RRHA premises. Testimony of Commissioner Vaughan, Commissioner Toney, and Mr. Edwards.

57. Offenses involving drunkenness in public and underage consumption of alcohol typically receive a $25 dollar fine, plus court costs. Offenses involving marijuana are either dismissed after a period of time or given a suspended sentence. These offenses are generally not treated seriously by the courts or prosecutors. Testimony of Larry Hogan, Esq.

*Weapons Prohibition*

58. Section 5(s) of the new lease requires that tenants "refrain from the use and/or possession of any weapon of any type on Management's property, including, but not limited to, guns, firearms (operable or inoperable), nunchucks, or similar instruments, blackjacks and explosive devices." Defendant's Exhibit 6.

59. Lease terms banning all weapons are exceedingly rare in public or private housing. Chicago is one of the few public

housing authorities which limits the use of guns. Plaintiffs' Exhibit 28, Testimony of Kent Willis.

60. There are differences of opinion regarding the effect of prohibiting possession of firearms in the home. Testimony of Paul H. Blackman and Dr. Barrett.

61. There are approximately 600 shootings in Richmond each year, with approximately one third of those occurring in RRHA developments. Testimony of Dr. Barrett.

62. For each incident where a gun is used in self defense, 4.1 people are accidentally killed by a gun in the home. Testimony of Dr. Barrett.

63. Firearms, particularly handguns, carry a high street price and are often the subject of burglaries. The presence of a gun can make a home more attractive to thieves. Testimony of Dr. Barrett.

64. Individuals who purchase guns for self-defense often do not know how to use them properly. Testimony of Dr. Barrett.

65. Prohibition of guns is an important proactive and symbolic step in preventing the escalation of violence. Testimony of Dr. Barrett.

66. The RRHA Commissioners were concerned about the violence caused by guns, and the danger that children would be accidentally killed or wounded by playing with guns kept in the home. Testimony of Commissioner Toney.

67. A firearm rendered inoperable by removal of a firing pin remains dangerous and a target of crime.

68. There is no evidence that a tenant has ever used a gun in self-defense.

69. There is no evidence that ceremonial or antique weapons, such a ceremonial swords or tomahawks, contribute to the problems that the commissioners were trying to address.

70. At least one RRHA official would interpret 5(s) as requiring removal of tomahawks or other antique weapons. This testimony suggests that section 5(s) may be arbitrarily applied. Testimony of Edwards.

71. There is no evidence that RRHA requires a broad definition of "weapons" to effectively remove firearms.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331, Federal Question jurisdiction.

2. Plaintiffs' claim for declaratory relief is authorized by 28 U.S.C. § 2201.

3. Plaintiffs are authorized to enforce their rights under federal law by 42 U.S.C. § 1983, because RRHA at all times was acting under color of law.

4. This Court has jurisdiction to decide Plaintiffs' first claim for relief because this claim for relief is based upon 28 U.S.C. § 1441 and 42 U.S.C. § 1437d(c), as implemented and interpreted in 24 C.F.R. § 966.3.

5. This Court has jurisdiction to decide Plaintiffs' second claim for relief because Plaintiffs have an enforceable right, under 42 U.S.C. § 1437d(*l*)(1), to require the RRHA to "utilize leases which do not contain unreasonable terms."

6. Plaintiff Richmond Tenants Organization has standing to represent its members in this action. *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

7. Federal courts have the power and the duty to interpret the terms "reasonable" and "unreasonable", as they appear in the National Housing Act. *Wright v. Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987).

*Notice*

8. HUD regulations required RRHA to give notice of its intent to modify the lease and provide an opportunity for comments. RRHA complied with all the applicable regulations, including 24 C.F.R. § 966.3.

9. The RRHA letter which described certain terms as duplicative was not required by HUD regulations or state law, nor was it deceptive.

10. RRHA is permitted to adjust proposed lease terms after the comment period

has concluded, without giving new notice. This power is essential to insure that proposed lease modifications can be adjusted and adopted without another full comment period on the adjustments. This power is limited to changes which do not substantially injure the interests of the tenants.

11. The addition of the 10 day guest period in section 5(c) of the lease was favorable to the tenants, as compared to the lease provision for which notice was given. Therefore new notice was not required.

12. The addition of the phrase "and alcoholic beverages" to section 5(v) had the effect of clarification. This modification did not substantially injure the rights of tenants, especially in light of this Court's determination invalidating the "or off" portion of the provision. This modification of the proposed lease addition was administrative, therefore no new notice was required.

13. In all respects, the notice given by RRHA complied with the HUD requirements and those provided in the old lease. There is no evidence that RRHA intended to deceive anyone regarding the modifications.

*Family Status*

██ 14. Section 4(e) of the new lease, which requires a tenant with a change in familial status to move within 10 days after written notice, does not discriminate against tenants based upon family status. The provision is designed to maximize the use of scarce public housing resources by ensuring that each apartment is occupied by the appropriate family. There is no disproportionate effect on tenants with familial status, since for each family required to move to a smaller unit as a result of reduced family size, another family presumably moves into the unit as a result of increased family size. The provision applies equally to all tenants, and is simply an administrative measure to maximize the usefulness of the apartments. There is no impermissible discrimination.

*Meaning of "Unreasonable" Lease Terms—Standard of Review*

15. The appropriate interpretation of 42 U.S.C. § 1437d(*l*)(1) is a matter of first impression.

16. Other courts have heard challenges to Public Housing Authorities (PHAs). These challenges have typically been based upon the PHA's failure to follow the National Housing Act. *See, e.g., Samuels v. District of Columbia,* 669 F.Supp. 1133 (D.D.C.1987).

17. In *Samuels v. District of Columbia,* 770 F.2d 184, 188–89 (D.C.Cir.1985), tenants challenged the failure of the housing authority to provide grievance procedures. The court noted that PHA compliance with 1437d(*l*)(1) was required. This Court finds that RRHA is not entitled to deference if it acts contrary to the Housing Act or HUD regulations.

18. This Court finds persuasive authority in *Gholston v. Housing Authority of Montgomery,* 818 F.2d 776, 781 (11th Cir. 1987), which held that "the scope of judicial review of a local housing authority's policies and practices is limited, and we will not view its actions as a violation of the Housing Act or HUD regulations unless it abused its discretion."

19. Although HUD has compiled required and prohibited lease terms, this list is not inclusive. "[T]he Department [HUD] did not intend, by not enumerating all possible lease provisions, to allow landlords to impose other provisions which may be unfair to tenants." 48 Fed.Reg. 43311 (1983).

20. When Congress enacted § 1437d(*l*), it essentially made the existing HUD regulations a statutory requirement. *See* discussion at 53 Fed.Reg. 33221 (1988). *See also* H.R.Rep. 123, 98th Cong., 1st Sess. 35–38 (1983). By implication, Congress therefore intended that courts construe § 1437d(*l*)(1) to prohibit terms unfair to tenants, regardless of whether they were listed in specific statutory or regulatory prohibitions.

21. In evaluating the "reasonableness" of lease provisions, this Court will consider the customary practice in the industry, as well as HUD regulations and commentary. If a provision is common in the industry or recommended by HUD, it will be considered presumptively reasonable.

22. In applying this test, the Court will look to the actual motives of the commissioners to determine what RRHA interest is addressed by the lease term. The Court will then examine the proposed term to see if it is reasonably related to the concern the commissioners sought to address. Consistent with the intent expressed by Congress in § 1437, this Court will focus on local conditions when assessing the propriety of the action taken. Lease provisions may be reasonable in one locale, yet unreasonable in another.

23. The lease provision need not be the best or most direct approach to the problem. There is no requirement that the PHA scientifically or rigorously study the problem or the various alternatives. This Court will not substitute its own judgment about how the lease should be worded. Rather, so long as there is a rational relationship between the term and a legitimate concern, the lease will be upheld.

*Evaluation of Specific Provisions*

24. RRHA's revised lease adopted on July 17, 1990 contains no provisions explicitly prohibited by HUD regulations.

25. Section 4(e) of the new lease, giving 10 days notice to move, is similar to provisions in the industry, and it therefore presumptively reasonable. Further, the Court finds that this provision is rationally calculated to increase revenues, decrease vacancies, and reduce crime. It is therefore a reasonable provision.

26. Section 10(a)(9) of the new lease, related to trash citations, is reasonable.

■ 27. Section 10(b)(2) of the new lease, regulating emergency termination of the lease and vacation of the premises, is similar to other PHA lease terms. Additionally, by its own terms, the provision calls for reasonable application. For these reasons, the Court finds the provision presumptively reasonable. Further, the Court finds that it is rationally related to RRHA's important interest in assuring the safety of its tenants and employees. As written, it is not so arbitrary or broad as to be unreasonable. The Court finds that this provision is not incompatible with the Virginia Residential Landlord and Tenant Act.

■ 28. Section 10(a)(4) of the new lease, which imposes liability on tenants for certain actions of invitees, is similar to other lease provisions used in the industry and is therefore presumptively reasonable. Further, this provision is rationally related to the legitimate RRHA interests in reducing crime and other disruptive conduct on the premises.

29. Section 5(c) of the new lease, relating to guest accommodation, is similar to other industry lease terms and is therefore presumptively reasonable. Further, it is rationally calculated to reduce illegal boarders and reduce crime. It is therefore reasonable.

30. Section 5(v), which prohibits illegal use of drugs or alcohol on or off premises, is not usually found in public housing leases. Although RRHA has a legitimate interest in avoiding illegal drugs or alcohol on the premises, or in "nip joints", these concerns are addressed by other lease provisions. HUD regulations only contemplate evictions for off-premises conduct where the crime involves physical violence (already largely covered by section 5(u) of the lease) or illegal use, sale, or distribution of narcotics. *See* discussion at 53 Fed.Reg. 33227 (1983). This Court finds HUD's analysis persuasive.

31. RRHA has shown no legitimate interest in prohibiting misdemeanor behavior by tenants when such conduct occurs off the premises.[2] The Court finds no persuasive evidence that off-premises illegal misdemeanor conduct spills over onto the RRHA developments. The Court further finds that making such conduct a material breach of lease imposes an unduly harsh penalty for such conduct, relative to what

---

**2.** RRHA does not contend, nor is there any evidence to suggest, that this provision was adopted to allow eviction for committing immoral acts. Therefore the reasonableness of terms to facilitate this purpose is not before the Court. However this Court doubt that a PHA has a legitimate interest in the morality of its tenants, absent a showing that such behavior impacts on the residential environment.

sanctions are meted out by the criminal justice system.

32. As worded, section 5(v) is overbroad and unreasonably punishes behavior widely tolerated elsewhere in society. RRHA can easily accomplish its legitimate objectives through other lease provisions.

33. For these reasons, the Court finds that the words "or off" in section 5(v) make this section unreasonable in violation of 42 U.S.C. § 1437d($l$)(1). These words are therefore invalidated, and should be severed from the lease in accordance with section 16.

34. Section 5(s) of the new lease, which prohibits the possession of any weapons, does not usually appear in public housing leases. The Court has found no evidence that HUD or any court has considered the propriety of such provisions.

35. The prohibition on the use and/or possession of various firearms is rationally related to the strong RRHA interest in reducing crime and violence. There is substantial evidence that eliminating guns will reduce crime in the developments and reduce accidental death. Despite conflicting expert testimony, this Court finds that a prohibition of firearms from public housing is a reasonable lease term within the meaning of § 1437d($l$)(1).

36. There is no evidence that a ban on "weapons of any type" would achieve legitimate interests not accomplished by a ban on firearms. All the evidence indicates that the commissioners were concerned exclusively about firearms, explosives, and other violent weapons associated with crime.

37. The prohibition of "weapons of any type" places the plaintiff who owns ceremonial swords, and others who own antique or ceremonial "weapons", in the position of materially breaching their lease. This provision could also be applied to knives, bows, flare guns, mace, fencing foils, baseball bats, and any other item which could be defined as a "weapon." This creates a substantial likelihood that this provision will be applied in an arbitrary or discriminatory manner.

38. In the absence of any justification or explanation for the extremely sweeping language, and in light of the fact that such language may be selectively applied to tenants, the Court finds that the words "weapon of any type" make section 5(s) unreasonable in violation of § 1437d($l$)(1). These words are therefor invalidated, and should be severed under section 16. Once the remaining portion of 5(s) is reworded for grammatical clarity, it should read: "To refrain from the use and/or possession on Management's property of guns, firearms (operable or inoperable), nunchucks, or similar instruments, blackjacks and explosive devices."

39. The Court finds that this phrasing of section 5(s) is rationally related to the legitimate RRHA interest in reducing crime and theft in the developments. Once the objectional phrase is severed, the remaining provision is reasonable.