**ALLEGHENY COUNTY HOUSING AUTHORITY, Appellant,**

v.

**John MORRISSEY and Elizabeth Morrissey.**

**ALLEGHENY COUNTY HOUSING AUTHORITY, Appellant,**

v.

**Sharon MOSES.**

Commonwealth Court of Pennsylvania.

Argued Nov. 1, 1994.
Decided Dec. 9, 1994.

John T. McVay, Jr., for appellant.

Anthony J. Martin, for appellees.

Before PELLEGRINI and FRIEDMAN, JJ., and NARICK, Senior Judge.

PELLEGRINI, Judge.

The Allegheny County Housing Authority (ACHA) appeals an order of the Court of Common Pleas of Allegheny County (trial court) denying its exceptions and post-verdict motion for entry of judgment notwithstanding the verdict (j.n.o.v.), and finding that there was no rational basis for its no-pet policy at its residential public housing project in McKees Rocks, Pennsylvania.

The facts of this case are not in dispute. The ACHA operates a low-income public housing project known as Ohioview Acres in McKees Rocks, Pennsylvania. Ohioview Acres, which is specifically designated for family use, consists of 69 buildings with a total of 250 units. At least since 1968, the ACHA has had a provision in its month-to-month lease agreement for tenants at Ohioview Acres prohibiting the ownership and maintenance of pets on the premises of its leased properties and project, and stating that tenants could be terminated for failure to abide by that policy. John and Elizabeth

Morrissey (Morrisseys), who have been tenants of Ohioview Acres since 1968, signed that agreement, but nonetheless maintained a pet dog since they began their tenancy to serve as a companion to their retarded daughter. In 1987, Sharon Moses (Moses) signed the ACHA's lease agreement with the no-pet provision but also maintained a pet dog since her tenancy began.

Due to the increasing number of tenants at Ohioview Acres who were maintaining pets on their leased premises in violation of their lease agreements, the ACHA began eviction proceedings in 1984. However, because tenants of that project wanted to live at Ohioview Acres and still keep their pets, they requested that their Tenant Council meet with the ACHA. After that meeting, on August 16, 1984, the ACHA sent a letter to all of the tenants of Ohioview Acres agreeing to place a temporary hold on all eviction proceedings and adopt regulations regarding the tenants' maintenance of their pets. The ACHA stated that tenants who currently owned pets and had contacted and been approved by the ACHA to maintain a pet would be allowed to maintain only one pet and would not be allowed to replace that pet once it died. The letter also specified that no new dogs, cats or other pets would ever be permitted. The ACHA noted in its letter that its ultimate goal was still to remove all pets from Ohioview Acres and bring all tenants into compliance with their leases.

As of April, 1988, the ACHA felt that its attempt to reconcile the pet problem with the tenants was unsuccessful because there were more pets on the premises of Ohioview Acres than ever before. In a continuing effort to gain control of the pet problem, it prepared a new lease agreement in September of 1990, specifically prohibiting pets in its residential project and stating that pets could only be kept in buildings designated by the ACHA for the elderly or handicapped.[1] The Morrisseys and Moses signed that lease agreement.

---

1. Under Section IX, subsection "T" of the new residential lease agreement listing the tenant's obligations, tenants are:

    To refrain from and cause members of Tenant's household to refrain from keeping, maintaining, harboring, or boarding any dog, cat, bird, livestock, or pet of any nature on the premises of any PHA family development, unless a verified physical handicap warrants the use of a support animal. Fish and one fish tank per unit, having a capacity of no more than 10 gallons, will be permitted; a monthly charge as specified in Part II of the lease will be assessed for heaters/aerators.

In October of 1990, the ACHA determined that it would terminate leases of those tenants who were maintaining a pet in violation of its August 16, 1984 letter and September 1990 lease agreement.[2] Pertinent to this case, the Morrisseys' lease was terminated because contrary to the provisions of the August 16, 1984 letter and the new lease agreement, they had obtained a new dog sometime around 1991, replacing their dog that they had since 1968 and died in 1983. Similarly, Moses' lease was terminated because she obtained a dog after she moved into her rental unit in 1987 in contravention of the August 16, 1984 letter stating that new pets would not be allowed and the new lease agreement in 1990 prohibiting pets.

The Morrisseys and Moses opposed this practice and requested a grievance hearing before the ACHA grievance committee. After the grievance hearing, the lease provision prohibiting pets was upheld in favor of the ACHA because it was determined that the ACHA only allowed pets to a limited degree in designated projects for the elderly or handicapped and not in residential projects.[3] The ACHA then initiated eviction procedures against the Morrisseys and Moses by filing complaints with the trial court seeking possession of their rental properties because they breached their rental contracts and unjust detention damages in lieu of rent in the amounts of $521 and $214 respectively.

After a hearing before an arbitration board, awards were entered in favor of the tenants. The ACHA filed appeals from the board's decision to the trial court. The cases were consolidated for a non-jury trial and a *de novo* hearing was held. By order entered July 30, 1992, verdicts were again awarded in favor of the tenants. In a memorandum in support of its verdicts, the trial court stated that because the ACHA relied on the fact that federal regulations required it only to accommodate the elderly or handicapped in allowing pets to enforce its no-pet policy, it did not have a valid reason to ban pets from its residential project because it failed to prove that there were federal regulations prohibiting pets in a residential project.

■ The ACHA filed post-trial motions requesting entry of j.n.o.v.[4] By opinion and order dated March 22, 1994, the ACHA's post-trial motions were denied by the trial court because it found that the evidence did not support a finding that the no-pet policy was rational and for the betterment of the entire community, and that there was insufficient evidence "to support a finding of conduct by these Defendants which would breach the terms of their leases so as to justify their eviction from their homes." This appeal by the ACHA followed.[5]

■ The ACHA first contends that it was entitled to j.n.o.v. as a matter of law because there is no such requirement that it prove federal regulations exist prohibiting pets in a residential project. Rather, 42 U.S.C. § 1437d(*l*)(2) of the General Program of the

---

In accordance with the PHA's Pet Policy, pets may be kept *only* in buildings or units designated by the Authority for the elderly or handicapped.

2. The ACHA did so pursuant to Section 511 of The Landlord and Tenant Act of 1951, Act of April 6, 1951, P.L. 69, 68 P.S. § 250.511. That section provides:

Nothing contained in this article shall be construed as abolishing the right of any landlord to recover possession of any real property from a tenant by action of ejectment, or from instituting any amicable action of ejectment to recover possession of any real property by confessing judgment in accordance with the terms of any written contract or agreement.

3. Also, in a grievance hearing involving Sheldon Park, another of the ACHA's residential projects, the arbitrator determined that the ACHA had a

no-pet policy in its residential projects and was not estopped from enforcing that policy.

4. The ACHA also filed appeals with the Superior Court. The Superior Court quashed the ACHA's appeal on the basis that they were premature, and noted that jurisdiction over its appeals was properly vested with this court.

5. Our scope of review of the trial court's denial of the ACHA's post-trial motions for j.n.o.v. is limited to determining whether there was sufficient competent evidence to sustain the verdict, granting the verdict winner the benefit of every reasonable inference reasonably to be drawn from the evidence and rejecting all unfavorable testimony and inferences. *Freidhoff v. Board of School Directors of Conemaugh Valley School District*, 137 Pa.Commonwealth Ct. 555, 586 A.2d 1038 (1991), *petition for allowance of appeal denied*, 528 Pa. 645, 600 A.2d 197 (1991).

Low Income Housing Act mandates that each public housing agency shall utilize leases which obligate the public housing agency to maintain the project in a decent, safe and sanitary condition. Given that mandate, the ACHA has the authority to carry out that purpose by issuing lease agreements with policies that meet that requirement unless there are contrary federal regulations.

■ The Morrisseys and Moses argue that there are federal regulations prohibiting a no-pet policy.[6] However, the regulations they refer to pertain only to public housing for the elderly and handicapped, not to residential projects.[7] There are no federal regulations prohibiting a no-pet policy relative to low-income residential housing projects. Because the terms of the ACHA's lease agreement are not prohibited by regulation and the Morrisseys and Moses signed the agreement, the ACHA had authority to implement provisions that it thought best to make Ohioview Acres decent, safe and sanitary. As such, contrary to the trial court's determination, the ACHA did not have to prove that there were federal regulations prohibiting pets in a residential public housing project because the terms of its lease agreement were valid.

■ The ACHA also argues that the trial court erred in finding that its no-pet policy was not rational and for the betterment of Ohioview Acres. Whether a policy or lease provision is reasonable depends on whether it is rationally related to a legitimate housing purpose. *Richmond Tenants Organization, Inc. v. Richmond Redevelopment and Housing Authority,* 751 F.Supp. 1204 (E.D.Va.1990). To make such a determination, the particular problems and concerns confronting the housing authority must be defined. *Id.* Lease provisions that are arbitrary and capricious, or excessively overbroad or under-inclusive, will be invalidated. *Id.* Whether a lease provision is rational is a question of law. *See Midnight Sessions, Ltd v. City of Philadelphia,* 945 F.2d 667 (3rd

Cir.1991) (whether legislative scheme is rationally related to legitimate government interest is a question of law for the court to determine). For a law to comport with substantive due process, it must rationally be related to a legitimate government interest. *Id.* Courts will defer to the legislative judgment rather than substitute their own judgment because they will not undermine the legitimacy of democratic decisionmaking unless the local legislative judgment is without a plausible rational basis. *Id.*

■ As already stated, 42 U.S.C. § 1437d(*l*)(2) of the General Program of the Low Income Housing Act mandates that a housing authority ensure that its public housing project is maintained in a decent, sanitary, safe condition through the terms of its lease agreement. Ohioview Acres consists of 250 units with a total of 69 buildings on approximately three streets. (Notes of Testimony at 93a.) Complaints were received by the ACHA regarding dogs running loose, foul odors and aggressiveness from animals in units that repairmen had to enter. Because there is a problem at Ohioview Acres maintaining a decent, safe and sanitary project due to the actions of tenants' pets, and the evidence of record also provides that ACHA is additionally responsible for maintaining approximately 2,200 apartments in 20 residential projects throughout Allegheny County, the ACHA's concerns regarding pets are legitimate because of the large number of units which they must maintain and keep safe for all of their tenants, not just pet owners. Because the ACHA must maintain Ohioview Acres for all of its tenants in a decent, sanitary and safe condition, the ACHA's no-pet policy provision in the lease is rationally related to a legitimate housing purpose.

■ Finally, the ACHA argues that there was sufficient evidence offered to support a finding that the Morrisseys and Moses had breached the terms of their lease agree-

---

**6.** *See* 42 U.S.C. § 3001, section 101 of the Older Americans Act of 1965, 12 U.S.C. § 1701r–1, section 227 of the National Housing Act and 24 CFR § 243.1(b).

**7.** Even though the Morrisseys and Moses argue that it is a violation of federal law not to designate Ohioview Acres as a handicapped or elderly facility, that is not a matter for this court to decide.

ments. Initially, we note that in Pennsylvania, our Supreme Court has determined that lease agreements are contracts and are to be interpreted according to contract principles. *Hutchison v. Sunbeam Coal Corporation,* 513 Pa. 192, 519 A.2d 385 (1986). Because a lease agreement between a housing authority and its tenant is treated the same as a lease agreement between a private landlord and its tenant, whether the ACHA's no-pet policy is a valid condition of its lease agreement is to be reviewed pursuant to contract law. Under contract principles, unless there are federal or state regulations prohibiting specific terms in a lease agreement, the lease agreement is a valid contract when both parties agree to its terms and conditions.

■ Here, the ACHA offered into evidence the lease agreement signed by the Morrisseys on November 27, 1968, and the lease agreement signed by Moses on September 1, 1987. The Morrisseys lease agreement specified:

> 10. (B) The tenant agrees: To refrain from keeping pets such as dogs, cats or other animals on the premises.

Moses' lease agreement specified:

> 7. (h) Tenant Agrees: To comply with rules of housing authority prohibiting Tenant to have animals such as dogs, cats in their apartments or on the projects, to remove same with or without notice.

Further, the ACHA entered into evidence its resident handbook entitled "The Allegheny County Housing Authority from A to Z" that it gave to the Morrisseys and Moses when they moved in. In that handbook, it literally spells out the following:

> D IS FOR DOGS ... We like dogs as much as anyone does, but we can't let them live with you in the Authority. Sorry, too much dirt, trouble, noise, danger. Your lease doesn't allow it. No other pets, either.

Additionally, the ACHA testified that the Morrisseys and Moses did not contact it and it did not approve either of them to keep pets in their rental properties pursuant to the August 16, 1984 letter.

Moreover, both the Morrisseys and Moses testified that they were aware when they signed the new lease agreement in 1990 that they were not permitted to have dogs on their property but maintained them anyway in breach of their lease agreements. Elizabeth Morrissey testified that she was aware of the 1984 pet provision, but "my daughter carried on so bad I bought her a new dog to quiet her down." (Notes of Testimony at 114a). Moses testified that while she was not aware of the pet prohibition in 1987 when she moved in because she "didn't really read the fine print of my lease until maybe six months later" (Notes of Testimony at 118a), she knew there was a prohibition when she signed the 1990 lease. (Notes of Testimony at 118a.)

That being the case, because the Morrisseys' dog died in 1983, the ACHA adopted its pet regulations in 1984, and the Morrisseys obtained a new dog in 1991, they were not only in violation of the pet regulations adopted in 1984, but also of the 1990 lease agreement. Similarly, because Moses did not become a tenant at Ohioview Acres until 1987 and only obtained a new pet after she moved in to her rental unit, she, too, was in violation of the pet regulations adopted in 1984, as well as the lease agreements she signed in 1987 and in 1990. As such, both the Morrisseys and Moses breached their lease agreements by maintaining dogs in their rental residences.

Nonetheless, the Morrisseys and Moses argue that the ACHA is estopped from evicting them because it allowed tenants to maintain pets in the past and they relied on that acquiescence. In order to apply the doctrine of equitable estoppel, the party to be estopped must have (1) intentionally or negligently misrepresented some material facts; (2) known or had reason to know that the other party would justifiably rely on the misrepresentation; and (3) induced the party to act to his or her detriment based on their justifiable reliance upon the misrepresented facts. *Foster v. Westmoreland Casualty Company,* 145 Pa.Commonwealth Ct. 638, 604 A.2d 1131 (1992). One who asserts estoppel must establish these elements by clear, precise and unequivocal evidence. *Id.* A party who has knowledge of the actual facts may not claim estoppel. *Livingston v.*

*Livingston*, 275 Pa.Superior Ct. 285, 418 A.2d 724 (1980).

Here, the ACHA's allowance of pets as of 1984 was narrowly limited to tenants then owning pets, and only for the lifetime of that pet without replacement after its death. Both the Morrisseys and Moses violated that provision. The 1984 regulations were also clear that if its terms were not met, the no-pet policy of the lease agreement applied instead. More importantly, the ACHA is entitled to issue leases with any type of policies as long as they do not contain unreasonable terms and conditions. *See* 42 U.S.C. § 1437d(*l*)(1) of the General Program of the Low Income Housing Act. As we previously determined, a no-pet policy is not an unreasonable condition of the ACHA's public housing lease agreement, and the ACHA had the right to issue lease agreements with such a policy. As such, the ACHA is not estopped from evicting the Morrisseys and Moses from Ohioview Acres for violating the terms of their lease agreements.

Consequently, because the ACHA's no-pet policy was reasonable and rationally related to the betterment of Ohioview Acres and there was sufficient evidence to support a finding that the Morrisseys and Moses breached their lease agreements by maintaining pets in their rental units, the trial court erred by denying the ACHA's motion for j.n.o.v. Accordingly, the decision of the trial court is reversed.

### ORDER

AND NOW, this 9th day of December, 1994, the order of the Court of Common Pleas of Allegheny County, Nos. 6147 AR 1991 and 6179 AR 1991, dated March 22, 1994, is reversed.