The **PARKING AUTHORITY OF THE CITY OF WILKES–BARRE,**

v.

The **TEN EAST SOUTH STREET COMPANY, A Limited Partnership, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Nov. 5, 2001.

Decided Dec. 11, 2001.

Reargument Denied Feb. 4, 2002.

---

Joseph G. Ferguson, Scranton, for appellant.

Marianne J. Gilmartin, Scranton, for appellee.

Before SMITH, Judge, FRIEDMAN, Judge, and JIULIANTE, Senior Judge.

FRIEDMAN, Judge.

The Ten East South Street Company (Ten East) appeals from the January 31,

2001 order of the Court of Common Pleas of Luzerne County (trial court), which denied Ten East's motion for summary judgment, granted The Parking Authority of the City of Wilkes–Barre's (Parking Authority) cross-motion for summary judgment and granted declaratory judgment in favor of the Parking Authority.

In 1968, the Parking Authority opened a commercial parking facility (Parking Facility) on South Main Street in the City of Wilkes–Barre (City). (Trial ct. op. of 1/31/01 at 4.) In 1975, Ten East built an apartment complex across the alley from the Parking Facility.[1] (Trial ct. op. of 1/31/01 at 4; Findings of Fact of 11/9/98, No. 4; R.R. at 232a.) In April of 1976, Ten East entered into a lease agreement with the Parking Authority,[2] under the terms of which Ten East could lease up to 150 parking spaces in the Parking Facility for use by Ten East and the tenants in its apartment building. (Trial ct. op. of 1/31/01 at 4; Findings of Fact of 11/9/98, Nos. 9–10; R.R. at 145a.) Section 4 of the lease, which governs possession, provides:

> Within thirty (30) days of receipt of written notice by [the Parking Authority] from [Ten East] of [Ten East's] request for possession, possession shall be given to [Ten East] of such number of parking spaces as [Ten East] shall request from time to time.... The rental terms shall begin on delivery of possession....

(Findings of Fact of 11/9/98, Nos. 11–12; R.R. at 145a.) The lease was to continue for "a maximum period of forty-six (46) years from delivery of possession," consisting of nine five-year "options" and one one-year "option," and the lease would be renewed automatically unless Ten East (with the Pennsylvania Housing Finance Agency's written approval) gave written notice of cancellation. (R.R. at 145a.)

Over its thirty years of operation, the Parking Facility deteriorated, causing the City to close the structure. (Findings of Fact of 11/9/98, No. 21.) In 1998, the City and the Parking Authority began planning a redevelopment project (Project) in the area surrounding and including the Parking Facility, which was to be renovated pursuant to a multi-million dollar contract. (Findings of Fact of 11/9/98, Nos. 22, 25.) The Project plan involved leasing 500 of the 550 parking spaces in the renovated Parking Facility to Corporate Express, a call center facility. (Trial ct. op. of 1/31/01 at 5; R.R. at 224a.)

The Project plans prompted the Parking Authority to file a Declaration of Taking to condemn "the leasehold interest, if any, owned by Ten East, because of the potential that the questionable property interest of Ten East might interfere with [the Project]...." (Trial ct. op. of 1/31/01 at 5.) Ten East filed preliminary objections,[3] and, on October 16, 1998, an evidentiary hearing was held before the trial court.

Following the evidentiary hearing, the trial court determined that the lease agreement between Ten East and the Parking Authority was not operational, reasoning that Ten East never made the written request for use of a designated

---

1. The apartment building is subject to a mortgage between Ten East and the Pennsylvania Housing Finance Agency. (Findings of Fact of 11/9/98, No. 5.)

2. During the construction of the apartment building, Ten East also secured permission from the Parking Authority to construct a passageway between the Parking Facility and

the apartment building; however, the passageway was never constructed, and the buildings remain detached. (Trial ct. op. of 1/31/01 at 4.)

3. Neither the reproduced record nor the original record indicates the basis of these preliminary objections.

number of spaces that would have given it possession of those spaces. (Findings of Fact of 11/9/98, Nos. 13, 15.) In fact, the trial court found that Ten East has never taken possession of any parking spaces; instead, upon refusal of Ten East to accommodate the parking needs of its tenants by exercising its option to lease a block of parking spaces, individual tenants made agreements directly with the Parking Authority to rent individual spaces on a monthly basis. (Findings of Fact of 11/9/98, Nos. 16–17.) Approximately forty tenants have entered into month-to-month leases with the Parking Authority. (Findings of Fact of 11/9/98, No. 18.) Thus, in a November 9, 1998 order, the trial court dismissed Ten East's preliminary objections.[4] (R.R. at 231a.)

Ten East appealed to this court, and, in a July 14, 1999 unreported opinion, this court reversed the trial court's order, sustained Ten East's preliminary objections and dismissed the Parking Authority's Declaration of Taking. *Ten East South Street Company v. Parking Authority of City of Wilkes–Barre*, 738 A.2d 534 (Pa. Cmwlth., No. 3226 C.D.1998, filed July 14, 1999) (*Ten East I*); (R.R. at 245a). In doing so, this court first held that because Ten East had no involvement with the procurement of parking spaces for its tenants and because the lease placed an affirmative duty on Ten East to request parking spaces, the trial court's November 9, 1998 finding that the lease between Ten East and the Parking Authority never became operational was supported by substantial evidence. (Slip op. at 5; R.R. at 249a.) However, this court concluded that, by determining the lease was not operational, the trial court in essence determined that Ten East had no interest subject to a taking, and, thus, the Parking Authority could not proceed in eminent domain. (Slip op. at 6; R.R. at 250a.) Accordingly, this court held that the trial court should have granted Ten East's preliminary objections and dismissed the Parking Authority's Declaration of Taking, although doing so would allow the Parking Authority to renovate the Parking Facility in accordance with its Project plans and without having to compensate Ten East. (Slip op. at 6–7; R.R. at 250a–51a.)

Following this court's decision, Ten East attempted to make the lease operational. On July 27, 1999, Ten East provided the Parking Authority with written notice requesting possession of ten parking spaces in the Parking Facility pursuant to the lease. (Trial ct. op. of 1/31/01 at 6–7; R.R. at 253a.) On August 25, 1999, the Parking Authority filed a complaint for Declaratory Judgment with the trial court requesting that the trial court declare the lease null and void, thereby relieving the Parking Authority of any obligation to honor Ten East's request for the ten spaces. (Trial ct. op. of 1/31/01 at 7; R.R. at 8a.)

Ten East subsequently filed an answer to the complaint and a motion for summary judgment, arguing that the trial court should order the Parking Authority to provide the ten spaces because: (1) Ten East's tenants leased spaces from the Parking Authority over the years to make the lease operational; (2) Ten East relied on the Parking Authority's assurances that Ten East did not need to make a formal written request for parking spaces to continue the twenty-two year practice; and (3) the July 27, 1999 request was a timely request for possession of parking spaces because it was made within the forty-six year option period as indicated in the lease. (R.R. at 118a–34a.) The Parking Authority filed an answer to Ten East's

---

4. On January 1, 1999, the Parking Authority transferred ownership of the Parking Facility to the Wilkes–Barre Redevelopment Authority. (Trial ct. op. of 1/31/01 at 6.)

motion for summary judgment and a cross-motion for summary judgment with the trial court. In its cross-motion, the Parking Authority argued that res judicata, collateral estoppel, equitable estoppel and waiver barred any claim by Ten East to rights pursuant to the lease because the trial court and the Commonwealth Court already had determined in the eminent domain proceedings that the lease was not operational. (R.R. at 367a–68a.)

■■■ In a January 31, 2001 order, the trial court denied Ten East's motion for summary judgment and granted the Parking Authority's cross-motion for summary judgment. Holding that collateral estoppel applied[5] to preclude Ten East from asserting any rights under the lease, the court determined that there were no disputed factual issues, and the Parking Authority was entitled to judgment as a matter of law. (Trial ct. op. of 1/31/01 at 10.) Ten East now appeals to this court.[6]

■■ Ten East first argues that the trial court erred in granting summary judgment based on collateral estoppel because the issues decided in *Ten East I* differed from those raised in the present case. Although we conclude that collateral estoppel does not apply, we base that conclusion on other grounds.

In order for collateral estoppel to apply, there must be, *inter alia*, a final judgment, that is, an adjudication, *on the merits* in the prior case. *In re Pennsylvania Turnpike Commission*, 715 A.2d 1219 (Pa. Cmwlth.1998), *appeal denied*, 557 Pa. 657, 734 A.2d 863 (1999). This court held in *Turnpike Commission* that a trial court's decision on preliminary objections in a previous case was not a judgment or adjudication on the merits, and, thus, collateral estoppel was inapplicable. *Id.* Here, the previous case, *Ten East I*, also concerned preliminary objections, which were filed by Ten East. Although the trial court and this court determined that the lease between Ten East and the Parking Authority was not operational in *Ten East I*, the courts did so in the context of dismissing or granting the preliminary objections. Thus, there was never an adjudication or

---

5. The doctrine of collateral estoppel prevents the assertion of issues previously addressed in prior litigation. *Balent v. City of Wilkes–Barre*, 542 Pa. 555, 669 A.2d 309 (1995). Collateral estoppel applies if (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment. *City of Pittsburgh v. Zoning Board of Adjustment of City of Pittsburgh*, 522 Pa. 44, 55, 559 A.2d 896, 901 (1989). Here, the trial court concluded that these criteria were met; specifically, the trial court found: (1) the issue of Ten East's rights under the lease is identical to the issue resolved in the Declaratory Judgment proceeding; (2) there was a final judg-

ment in the previous action; (3) the parties were the same in both cases; (4) Ten East had a full and fair opportunity to litigate the issue presented in the previous case; and (5) the issue resolved in the previous case was essential to the judgment rendered. (Trial ct. op. of 1/31/01 at 8.)

6. Our scope of review of the trial court's orders here is limited to determining whether the trial court made an error of law or abused its discretion. *E.O.J., Inc. v. Tax Claim Bureau of Schuylkill County*, 780 A.2d 814 (Pa. Cmwlth.2001). An abuse of discretion exists where the judgment exercised by the lower court is manifestly unreasonable. *Id.* Moreover, summary judgment is only appropriate when, after examining the record in the light most favorable to the non-moving party, there is no genuine issue of material fact, and the moving party is clearly entitled to judgment as a matter of law. *Id.*

judgment *on the merits* and collateral estoppel does not apply.

■ As to the merits, Ten East next argues that summary judgment should be entered in its favor because it timely exercised its option within the forty-six year period provided in the lease. We disagree.

To the contrary, we hold that because Ten East did not exercise its option within a reasonable time, considering all the circumstances, *see Baker v. Brennan*, 419 Pa. 222, 213 A.2d 362 (1965), its belated attempt to make the lease operational must fail.

■ Here, the forty-six year time period indicated in the lease refers to the length of the lease if Ten East had requested parking spaces. In other words, this did not become a forty-six year lease unless and until Ten East formally requested the spaces in writing from the Parking Authority. Although the lease does not specify a time period in which Ten East had to exercise its first option to request spaces on an "as needed" basis, Ten East's action over twenty-three years after the lease was signed cannot be viewed as a legitimate attempt to secure the spaces. This is particularly true where Ten East took its action only after it was clear from *Ten East I* that Ten East was not going to forever have the option to lease spaces or profit from that leasehold interest. Until that time, Ten East was content to avoid formally leasing the spaces and referring its tenants to the Parking Authority for parking spaces. Ten East's conduct was sufficient to lead the Parking Authority to believe that Ten East had abandoned the option to contract for the parking spaces on its own. "Parties to a written contract may abandon,

modify or change it either by words or conduct." *Barr v. Deiter*, 190 Pa.Super. 454, 154 A.2d 290, 293 (1959). Under the circumstances of this case, Ten East's attempt to exercise its lease option after twenty-three years may not be recognized under contract law.[7]

Because the lease between Ten East and the Parking Authority was not made operational by the July 27, 1999 letter, Ten East was precluded from asserting any rights under the lease, and the trial court correctly determined that the Parking Authority was entitled to judgment as a matter of law. Accordingly, we affirm.

### ORDER

AND NOW, this 11th day of December, 2001, the order of the Court of Common Pleas of Luzerne County, dated January 31, 2001, is hereby affirmed.

Judge SMITH dissents.

---

7. We note that, in Pennsylvania, lease agreements are contracts and are to be interpreted according to contract principles. *Allegheny*

*County Housing Authority v. Morrissey*, 651 A.2d 632 (Pa.Cmwlth.1994), *appeal denied*, 541 Pa. 642, 663 A.2d 694 (1995).