## Kingston Borough Appeal.

Argued April 11, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*James P. Harris,* for appellant.

*S. W. Rhoads,* for appellee.

OPINION BY MR. JUSTICE PATTERSON, May 21, 1945:

This is an appeal by the Borough of Kingston, intervenor in a proceeding before a State Mining Commission convened upon petition of the Lehigh Valley Coal Company, appellee, to determine the underlying or adjacent coal to be left in place as vertical or lateral support for lands taken by the Commonwealth in the creation and adoption of Flood Control District No. 4.

On October 13, 1937, official plans and maps for Flood Control District No. 4 within the Boroughs of Edwardsville and Kingston, Luzerne County, were adopted by the Board for Flood Control District No. 4 and duly recorded. Subsequent amendments thereto were made May 11, 1938. Pursuant to the Act of 1936, Ex. Sess., P. L. 106, as amended by the Act of 1937, P. L. 43, 32 P. S. 653, et seq., the Water and Power Resources Board, on January 11, 1939, condemned the land in question belonging to the Lehigh Valley Coal Company. A pumping station and various dikes and levees

necessary to carry out the comprehensive system of flood control have been erected on this land. On October 5, 1942, Lehigh Valley filed its petition praying for the convening of a State Mining Commission.[1] It averred that it was the owner of certain coal condemned by the said Water and Power Resources Board. A commission was duly convened on October 11, 1942. The evidence consisted of the petition and answer and a stipulation entered into by engineers representing the Borough of Kingston, the Commonwealth of Pennsylvania, through its Water and Power Resources Board, and the Lehigh Valley Coal Company.

The stipulation sets forth, *inter alia,* that the total amount of Lehigh Valley Company coal required to be left in place for vertical and lateral support of the dike was 4,000,000 tons; that 275,000 tons would be required to provide vertical and lateral support for the pumping station; that 32,220 tons had already been purchased for the latter purpose, and 15,500 additional tons should be acquired to afford adequate support to said pumping station; that the fair cost of the 15,500 tons would be $7,750; that to absolutely secure vertical and lateral support by the purchase of 250,000 tons would necessitate the expenditure of $137,500; and, that the original cost of constructing the said pumping station was $163,-273.72. The replacement cost of the dikes and levees was estimated to be $500,000. Repairs over a period of ten to fifteen years would not exceed $200,000. Condemnation of all coal necessary for vertical and lateral support of the project would cost $1,622,180. The stipulation concluded that the cost of purchasing pillar coal sufficient to provide reasonably adequate support far exceeds the cost of repairing damage which might result from subsidence and that such subsidence as would result would not cause loss of life or property to persons properly using said improvements.

---

[1] Act of 1941, P. L. 259, 52 P.S., sec. 1501 et seq.

The Commission, in its decision of May 3, 1944, concluded that "the vertical and lateral support by underlying coal of the lands, easements or rights of way acquired by the Commonwealth, other than that required for the support of the pumping station . . . is waived, and the petitioner should be, and hereby is, entitled to mine and remove said coal in the ordinary and usual course of mining", and awarded damages in the amount of $7,750 for the coal required to maintain or reasonably secure said pumping station. Thereafter, appellant borough petitioned for leave to intervene, setting forth that it was an interested party for the reason that a part of said easement acquired by the Commonwealth was Church Street, a duly constituted borough street; that it was under contract with the United States Government and the State Water and Power Resources Board to maintain and operate said levees; and, that a break therein would cause great destruction and endanger the lives of its citizens. It averred a lack of evidence showing the right of the Lehigh Valley Coal Company to mine the coal in question. An answer was filed setting forth that no part of the dike constructed within the easement acquired by the Commonwealth was upon any street of Kingston Borough. On May 1, 1944, after hearing, the Borough was permitted to intervene but its application for modification of the Commission's order of February 3 was refused. In its opinion the Commission held that it was without jurisdiction to adjudicate questions regarding the support of the Borough street and that any contractual relationship between the owner of the coal and its lessor remained unaffected by the Commission's rulings. This appeal followed.

Appellant contends that (1) Lehigh Valley Coal Company failed to establish its right to remove the coal, and (2) the evidence was insufficient to support a finding of a waiver by the Commonwealth to the right to vertical and lateral support. *Lehigh Valley Coal Com-*

*pany Appeal,* 351 Pa. 108, relied upon by appellant, is not controlling here. There the Commission found the right of support to have been vested in the public at the time of condemnation. Here there has been no controversy over such right. No claim to the right to remove coal vertically or laterally supporting appellant's streets has been made here. That issue, therefore, is not involved. Whether any right to vertical or lateral support exists was not before the Commission and it properly held that "If, as asserted by the Borough, the owner of the coal is obligated to leave adequate support for the alleged street, and the support of the same is jeopardized by the contemplated removal of the coal the courts have jurisdiction to give ample relief, but the State Mining Commission does not."

There was ample evidence to support the finding of a waiver. Further, appellant's engineer joined in the stipulation of facts upon which the finding was based. The instant case is an excellent example of the purpose for which the legislation providing for the convening of a State Mining Commission was enacted.

The order appealed from is affirmed. Costs to be paid by appellant.