715 A.2d 1219 (1998)
In re Application of PENNSYLVANIA TURNPIKE COMMISSION, Respondent, to Convene a State Mining Commission to Determine Underlying and Adjacent Support Coal to be left in place, to Assess Damages and Other Matters under Lands Located in Carroll Township, Washington County, Pennsylvania, Necessary for the Construction of the Mon/Fayette Expressway, S.R. 0043, Section 52 F1 and Bridge No. MF 303/304, MP-M42.26.
Appeal of MAPLE CREEK MINING, INC., Appellant.
Commonwealth Court of Pennsylvania.
Argued June 8, 1998.
Decided July 6, 1998.
*1221 Roger J. Ecker, Washington, for appellant.
Samuel P. Kamin, Pittsburgh, for appellee.
Before PELLEGRINI and KELLEY (P.), JJ., and RODGERS, Senior Judge.
PELLEGRINI, Judge.
Maple Creek Mining, Inc., (Maple Creek) appeals from an order of the Court of Common Pleas of Washington County (trial court) overruling its preliminary objections to the Pennsylvania Turnpike Commission's (Turnpike Commission) Petition to Convene a Pennsylvania State Mining Commission.
Maple Creek owns a mine in Washington County, Pennsylvania, where it employs approximately 425 people engaged in the process of deep coal mining. Maple Creek transports coal from its mine to its coal processing plant and transports equipment, materials and supplies from mine to mine via underground tunnels. The Turnpike Commission plans to build a 17-mile expressway from Washington County to Jefferson Borough, Allegheny County, that will be known as the "Mon-Fayette Expressway" (MFX). The MFX will be built on property on which the Commonwealth owns the surface rights but which lies over portions of Maple Creek's two main underground tunnels and mine. The portions of land over which the MFX is expected to be built are referred to as Sections 52F1 and 52F2.
Because the MFX was to be built over an operating coal mine, the Turnpike Commission filed a petition in the trial court to convene a State Mining Commission pursuant to Section 1 of what is commonly known as the State Mining Commission Act (SMC Act),[1] to acquire support rights owned by Maple Creek to construct the MFX on Tract 52F1 and to request a determination of the necessary lateral and subjacent support. The Turnpike Commission alleged that the State Mining Commission had exclusive jurisdiction to determine the underlying coal to be left in place, the coal to be removed, the material, if any, to be substituted for the coal to be removed and the ability to assess damages.
Maple Creek filed preliminary objections to the petition alleging, inter alia, that the trial court had no jurisdiction over the Petition to Convene a State Mining Commission because a pending prior action at No. 94-2446 would determine where Section 52F1 of MFX was going to be located. Maple Creek also argued that the Petition to Convene the State Mining Commission was unconstitutional on its face, as well as violative of Article I, Section 10 of the Pennsylvania Constitution.[2]
Dismissing Maple Creek's preliminary objections, the trial court held that the State Mining Commission has exclusive jurisdiction *1222 to regulate the amount of coal to be left in place for vertical and lateral support, as well as damages relative to the support. It also rejected Maple Creek's challenge to the constitutionality of the SMC Act, holding that rights of support and assessment of damages are expressly provided for under the SMC Act.[3] Subsequently, Maple Creek sought to certify the order for appeal,[4] the trial court granted certification and we accepted the appeal.[5]
As before the trial court, Maple Creek contends that the Turnpike Commission's Petition to Convene a State Mining Commission should be denied because (1) without a prior proceeding instituted under the Eminent Domain Code  i.e., a declaration of taking or condemnation  the State Mining Commission cannot ascertain what support rights are necessary, and (2) the State Mining Commission has limited jurisdiction and authority to determine issues as to whether the construction of the MFX will cause destruction of the mine and environmental damage.[6]
Not only does it disagree with the substance of those objections, the Turnpike Commission argues that the issues raised by Maple Creek in its preliminary objections have already been determined in a prior action between the same parties so that the doctrine of collateral estoppel applies to bar relitigation of those issues. In case No. 94-2446, Maple Creek filed an equity action before the trial court seeking to enjoin the construction of MFX at tracts 52F1 and 52F2. The Turnpike Commission filed preliminary objections to this action contending, inter alia, that the action should be dismissed because Maple Creek had to proceed either under the Eminent Domain Code[7] and/or before the State Mining Commission. The trial court sustained the Turnpike Commission's preliminary objections and dismissed the action. On appeal, by decision dated April 9, 1998, No. 2768 C.D.1997 (filed April 9, 1998) (Maple Creek I), we agreed with the trial court and affirmed, holding that whenever the Turnpike Commission acquired or intended to acquire land with underlying mineable coal, the State Mining Commission was empowered to investigate the matter and order the Turnpike Commission to do whatever was necessary to ensure the integrity of the mine.[8]
In order for collateral estoppel to apply, it must be shown, inter alia, that *1223 there was a final judgment[9]on the merits. C.D.G. Inc. v. Workers' Compensation Appeal Board (McAllister), 702 A.2d 873 (Pa. Cmwlth.1997). In order for this doctrine to apply, not only must the judgment have been on the merits, but there also must have been adjudication on the merits. Veltri v. City of New Kensington, 144 Pa.Cmwlth. 121, 601 A.2d 392 (1991), petition for allowance of appeal denied, 530 Pa. 658, 608 A.2d 32 (1992). In Maple Creek I, however, the trial court sustained the preliminary objections filed by the Turnpike Commission and, because the resolution of that case was not a judgment or adjudication on the merits, the doctrine of collateral estoppel is inapplicable.[10]
As to the merits of this case, Maple Creek contends that the convening of the State Mining Commission was premature without a pending or final action under the Eminent Domain Code because an action pursuant to the Eminent Domain Code is a prerequisite to the exercise of jurisdiction by the State Mining Commission. Section 1 of the SMC Act, 52 P.S. § 1501, sets forth the responsibilities and authority of the State Mining Commission and provides in relevant part:
Whenever the Commonwealth has heretofore acquired or may hereafter acquire lands, easements or right of ways underlaid by minable coal, the State Mining Commission created in accordance with the provisions of this act upon application of the Commonwealth ... or the owner of the coal underlying such lands, ... is hereby empowered to determine, authorize, and direct the underlying or adjacent coal, if any, to be left in place for the purpose of furnishing vertical or lateral support to said land, easement or right of way, the underlying or adjacent coal, if any, which may be removed, and the material, if any, to be substituted for the coal so removed, together with the method and manner of placing such material in the mine workings, for the purpose of furnishing both vertical and lateral support to such land, easement or right of way and the party or parties by whom the expense thereof shall be paid.
...

This commission shall have exclusive jurisdiction of the mining of coal under lands, easements and right of ways purchased, condemned or otherwise acquired by the Commonwealth and judicial powers to hear and determine all evidence which may be presented; . . . to conduct such investigations as it may deem necessary; to make and enforce such orders, decrees and rules of procedure as it may deem advisable; to determine and assess damages, if any, for coal required by the said Commission to be left in place and benefits, if any, for improvements or betterments; to allocate among the parties in interest the cost of its proceedings as well *1224 as any work which it may order performed and to enforce its orders and decrees through the court of common pleas of the county in which the lands, easements and right of ways purchased, condemned or otherwise acquired by the Commonwealth is situated. (Emphasis added).
Under this provision, the State Mining Commission is vested with the exclusive jurisdiction to determine mining of coal under lands and to make a determination of the value of coal under land taken for highway purposes. 52 P.S. § 1501; Williams v. Department of Highways, 423 Pa. 219, 223 A.2d 865 (1966). Moreover, nothing requires that a declaration of taking be filed for the State Mining Commission to exercise its jurisdiction, including the Eminent Domain Code, which specifically provides that nothing in it shall be deemed to affect, vary, alter or modify the jurisdiction or power of the State Mining Commission. 26 P.S. § 1-303.
In In re Appropriation and Taking of Lands of Moffat, 400 Pa. 123, 161 A.2d 352 (1960), when considering a petition to the State Mining Commission filed by an owner of coal to determine the amount of coal necessary to give lateral and vertical support to certain portions of the turnpike extension, our Supreme Court differentiated the jurisdiction of the board of viewers appointed pursuant to the Eminent Domain Code from that of the State Mining Commission when coal was involved as follows:
Generally speaking, the preliminary appraisement of damages resulting from the exercise of the right of eminent domain by the Commonwealth or its nominees is entrusted to a board of viewers. When coal is taken for the vertical and lateral support of lands, easements or rights-of-way of the Commonwealth, however, the legislature has chosen to set up a separate body to assess the resulting damages. This body, the State Mining Commission, is empowered under the Act to determine, inter alia, the amount of coal to be left in place for support purposes and to assess the damages suffered by the taking.
Id. at 127, 161 A.2d at 355.[11] Where coal is taken to support lands, easements or rights of way, the State Mining Commission then has exclusive jurisdiction and the Eminent Domain Code is inapplicable.
Because the Turnpike Commission[12] as owner of the surface rights under which the mineable coal owned by Maple Creek lies, properly petitioned to convene the State Mining Commission so that a determination as to the lateral and adjacent support could be rendered and damages assessed. Accordingly, the trial court properly determined that the State Mining Commission has jurisdiction to determine the underlying coal to be left in place, the coal to be removed, the material, if any, to be substituted for the coal to be removed and to assess damages. 52 P.S. § 1501; Williams v. Department of Highways, 423 Pa. 219, 223 A.2d 865 (1966).[13]
*1225 Maple Creek also contends that because issues regarding destruction of its mine and the environmental consequences that may arise from the construction of the MFX are beyond the scope of the State Mining Commission's authority, the trial court improperly granted the Turnpike Commission's Petition.[14] Assuming that the State Mining Commission did not have sufficient jurisdiction to answer all its concerns as suggested by Maple Creek, that does not mean that the Commission cannot exercise the jurisdiction that it does have to determine how much coal should be left in place for support and the value of that coal. We note, though, that the State Mining Commission will implicitly deal with the environmental and safety concerns because the catastrophic result Maple Creek alleges will only occur if the road collapses the mine. By determining the amount of coal needed to be left in place to support the MFX, the State Mining Commission will necessarily address that concern.[15]
Accordingly, because the State Mining Commission has jurisdiction to determine the amount of vertical and lateral support to be provided by coal underlying Section 52F1 of the MFX, the trial court properly dismissed Maple Creek's preliminary objections to the Turnpike Commission's Petition to Convene a State Mining Commission and its decision is affirmed.

ORDER
And now, this 6th day of July, 1998, the November 12, 1997 decision and order of the *1226 Court of Common Pleas of Washington County, No. 97-2968, is affirmed.
NOTES
[1] Act of June 1, 1933, P.L. 1409, as amended, 52 P.S. §§ 1501-1507. Section 1 provides in part:

The application on behalf of the Commonwealth shall be made by the department, board or commission of the State government having jurisdiction over the particular land, easement or right of way underlaid by mineable coal. The president judge of the court of common pleas of the county in which the land, easement or right of way is situated, who shall be the chairman thereof, one member of the Public Utility Commission or an engineer designated by it, the Secretary of Mines or his designated representative, the head of the department, board or commission of the State government owning the lands, easements or right of ways in question or his designated representative, and an engineer designated by the owner or person entitled to remove the coal, are hereby constituted a special commission to be known as the State Mining Commission.
[2] Article I, Section 10 of the Pennsylvania Constitution provides in relevant part:

No person shall, for the same offense, be twice put in jeopardy of life or limb; nor shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured.
[3] Maple Creek filed an action in equity with the trial court to compel the Turnpike Commission to file a declaration of taking at No. 97-4601 while Maple Creek I was still pending. Maple Creek argued that the outcome of that action would affect the Turnpike Commission's right to convene a State Mining Commission. The trial court, however, held that because the action at No. 97-4601 was a subsequent cause of action to the petition to convene a State Mining Commission, it was irrelevant and declined to address it.
[4] By order dated December 29, 1997, the trial court granted Maple Creek's Motion to Certify Order for Appeal and found that "its November 12, 1997 Order overruling and dismissing the Preliminary Objections of [Maple Creek] involves controlling questions of law as to which there is substantial ground for a difference of opinion and that immediate appeal of such Order to the Commonwealth Court of Pennsylvania may materially advance the ultimate resolution of this matter." By order dated January 27, 1998, this Court granted Maple Creek's petition for permission to appeal and stayed all proceedings pending resolution of this appeal. See Section 702(b) of the Judicial Code, 42 Pa.C.S. § 702(b).
[5] Our scope of review of a decision of the trial court dismissing preliminary objections is limited to determining whether the trial court abused its discretion or committed an error of law. Maurizi v. Department of Transportation, 658 A.2d 485 (Pa.Cmwlth.1995).
[6] Maple Creek also contends that Sections 1501 and 1505 of the SMC Act, 52 P.S. § 1501 and § 1505, and the Turnpike Commission's petition to convene a State Mining Commission are all unconstitutional and result in an unconstitutional taking in violation of Article I, Section 10 of the Pennsylvania Constitution.
[7] Act of June 22, 1964, Special Sess., P.L. 84, as amended, 26 P.S. §§ 1-101-1-903.
[8] We noted that the State Mining Commission provides an adequate legal remedy for Maple Creek's claims, and that once the Turnpike Commission actually takes the surface land, then Maple Creek can file preliminary objections under Section 406 of the Eminent Domain Code, 26 P.S. § 1-406, to the declaration of taking. We also held that if there is a de facto taking, Maple Creek can petition for an appointment of viewers under Section 502 of the Eminent Domain Code, 26 P.S. § 1-502.
[9] For purposes of collateral estoppel, a judgment is deemed final unless or until it is reversed on appeal. Philadelphia Fraternal Order of Correctional Officers v. Rendell, 701 A.2d 600 (Pa.Cmwlth.1997). Therefore, a pending appeal does not destroy the finality of a decision. Yonkers v. Donora Borough, 702 A.2d 618 (Pa.Cmwlth.1997).
[10] The Turnpike Commission contends that, in the alternative, the disposition of the remaining issues is controlled by the "law of the case" doctrine. The law of the case doctrine is a doctrine that prohibits an appellate court from revisiting an issue that has been decided in an earlier appeal or another phase of the same case between the same parties. Tandon v. State Board of Medicine, 705 A.2d 1338 (Pa.Cmwlth.1997). In Tandon, we cited Tyro Industries, Inc. v. James A. Wood, Inc., 418 Pa. Superior. Ct. 296, 305, 614 A.2d 279, 284 (1992), in which our Superior Court described the law of the case doctrine as follows:

`Law of the case means that whatever is once irrevocably established as the controlling legal rule of the decision between the same parties in the same case continues to be the law of the case.' Banker v. Valley Forge Ins. Co., 401 Pa.Super. 367, 374, 585 A.2d 504, 508 (1991) (citations omitted, emphasis supplied). The doctrine of `law of the case' applies only if the parties on the two appeals are the same. Issues decided by an appellate court on a prior appeal between the same parties become the law of the case and will not be considered on appeal. Id.
Because the Turnpike Commission seeks to rely on the "law of the case" doctrine to dispose of matters currently before us based on legal reasoning set forth in a different case, albeit between the same parties, this doctrine is inapplicable.
[11] In In re Appropriation and Taking of Lands of Moffat, our Supreme Court, quoting Glen Alden Coal Company Case, 350 Pa. 177, 182, 38 A.2d 37, 39 (1944), further explained the purpose of the State Mining Commission and detailed its expertise:

"The determination of the value of the surface lands is something within the intellectual ken of ordinary citizens, but the question of the extent and value of the `third estate' is a subject requiring a comprehension of scientific principles and their application, and this fact justifies the creation of a different tribunal to deal with that problem. There is no reason why the legislature may not make such a tribunal a permanent body and confine its personnel to specialists and experts."
[12] The Turnpike Commission is a Commonwealth agency as defined by Section 102 of the Judicial Code, 42 Pa.C.S. § 102. Commonwealth agency is defined under that same section as boards, commissions, authorities and other agencies and officers of the Commonwealth government. The Turnpike Commission is a "commission" pursuant to 36 P.S. § 652d. See Pennsylvania Turnpike Commission v. Jellig, 128 Pa. Cmwlth. 171, 563 A.2d 202 (1989), affirmed, 533 Pa. 114, 620 A.2d 481 (1993).
[13] Maple Creek also argues that the convening of the State Mining Commission is premature because there is an equity action at No. 97-4601 pending before the trial court to compel the Turnpike Commission to file a declaration of taking. Not only was this action filed subsequent to the Turnpike Commission's petition to convene a State Mining Commission, the Turnpike Commission owns the surface rights to Section 52F1 and has requested only that the State Mining Commission determine the support rights necessary with respect to that Section. Consequently, the pendency of that Petition has no effect on the procedure.
[14] Maple Creek relies on Kingston Borough Appeal, 352 Pa. 222, 42 A.2d 604 (1945), for the proposition that the question of whether the collapse of the mining tunnels can be enjoined is a question for the courts, not the State Mining Commission to determine. In Kingston Borough, the State Mining Commission was convened to determine the underlying or adjacent coal to be left in place as vertical or lateral support for a pumping station. The Intervenor  Kingston Borough  sought a determination of vertical or lateral support of a borough street. Because the Borough never sought to have the State Mining Commission consider this matter, our Supreme Court agreed that the issue of support for the borough street had been waived. Because all that was before the State Mining Commission was the vertical and lateral support for the pumping station, the Supreme Court determined that there was no controversy over the right of support, no claim to the right to remove coal vertically or laterally had been made and whether any right to vertical or lateral support existed was not before the State Mining Commission and stated:

If ... the owner of the coal is obligated to leave adequate support for the alleged street, and the support of the same is jeopardized by the contemplated removal of the coal the courts have jurisdiction to give ample relief, but the State Mining Commission does not. (Emphasis added).
Id. at 226, 42 A.2d at 606.
In Kingston, the Supreme Court mentioned that where a State Mining Commission has been convened to determine the support rights underlying a pumping station and an intervenor requests a determination of the support rights for a borough street, the courts, not the State Mining Commission, may have jurisdiction over that determination. However, we presume that the Supreme Court was referring to Section 5206 of the General Municipal Law, Act of July 26, 1913, P.L. 1439, 53 P.S. § 5206, which provides that it is unlawful:
for any person, firm, association, or corporation to dig, mine, remove, or carry away the coal, . . . forming the natural support of the surface, beneath the streets, avenues, thoroughfares, courts, alleys, places, and public highways of any municipal corporation within the Commonwealth . . . without having first placed, built, erected, and constructed sufficient adequate and permanent artificial support, in place and stead thereof, to maintain, uphold, and preserve the stability of the surface of said streets . . .
Presumably, this provision would be enforced in the courts.
[15] Finally, Maple Creek argues that Sections 1501 and 1505 of the SMC Act, 52 P.S. § 1501 and § 1505, and the Turnpike Commission's petition to convene a State Mining Commission are all unconstitutional and result in an unconstitutional taking in violation of Article I, Section 10 of the Pennsylvania Constitution and the 5th and 14th Amendments of the United States Constitution. (The 5th Amendment of the United States Constitution, applicable to the states through the 14th Amendment, requires that just compensation must be made or secured prior to any taking.) Maple Creek argues that because the Turnpike Commission has initiated a procedure to determine the amount of coal necessary to provide subsurface support for the MFX without commencing the appropriate condemnation procedures under the Eminent Domain Code, a taking without just compensation will result. This contention completely ignores that the proceeding before the State Mining Commission will provide just compensation for the coal required for support.