The **UNIFIED SPORTSMEN OF PENNSYLVANIA by and through their members, individually and collectively, Petitioners**

v.

The **PENNSYLVANIA GAME COMMISSION (PGC), and the Commissioners of the PA Game Commission (in their official capacity) of the Commonwealth of Pennsylvania, Respondents.**

Commonwealth Court of Pennsylvania.

Argued April 7, 2008.
Decided June 16, 2008.

Charles B. Haws, Reading, for petitioners.

Timothy P. Keating, Sr. Deputy Attorney General, Harrisburg, for respondents.

BEFORE: LEADBETTER, President Judge, SIMPSON, Judge, and McCLOSKEY, Senior Judge.

## OPINION BY Judge SIMPSON.

Before this Court in our original jurisdiction are the preliminary objections of the Pennsylvania Game Commission and its Commissioners (Game Commission) to a Petition for Declaratory Judgment and for Equitable Relief (Petition) filed by the Unified Sportsmen of Pennsylvania and its members (Sportsmen). On two prior occasions, this Court sustained preliminary objections and ultimately dismissed Sportsmen's prior action challenging the Game Commission's policies relating to the management of Pennsylvania's deer herd. *See Unified Sportsmen of Pa. v. Pa. Game Comm'n (Sportsmen I)*, 903 A.2d 117 (Pa. Cmwlth.2006); *Unified Sportsmen of Pa. v. Pa. Game Comm'n (Sportsmen II)*, (Pa. Cmwlth., No. 427 M.D.2005, filed January 10, 2007).

Through their current Petition, Sportsmen allege the Game Commission improperly authorized the decimation of Pennsylvania's deer herd in excess of its natural and sustainable population through the issuance of antlerless deer permits and administration of the Deer Management Assistance Program (DMAP). Sportsmen seek an order requiring the Game Commission to collect appropriate "reproductive data" when considering the number and allocation of antlerless deer permits. They also ask this Court to require the Game Commission to put an immediate halt to the taking of antlerless deer on state game land and state forest land pending collection of the appropriate data. The Game Commission raises several pre-liminary objections. For the reasons that follow, we overrule the preliminary objections.

In their Petition, Sportsmen set forth the following allegations.[1] Sportsmen are a group of Pennsylvania hunters and outdoorsmen whose membership exceeds 30,-000 individuals. They bring suit here in an effort to protect and preserve Pennsylvania's deer herd.

Sportsmen aver the Game Commission failed in its duties and responsibilities to preserve and protect the deer herd as a ward of, and for, Pennsylvania citizens. They allege the Game Commission abused its discretion as to the number and allocation of antlerless deer licenses issued for the 2007 hunting season as well as its administration of the DMAP. Sportsmen aver the Game Commission acted intentionally to destroy and diminish the deer herd in contravention of law, below the natural and sustainable population level.

Sportsmen seek "declaratory ... and injunctive relief to protect and preserve the ... deer herd in order to adequately serve the interests of sportsmen to hunt and trap the wildlife resources of our Commonwealth as provided in 34 Pa.C.S. § 322(c)(13)." Pet. at ¶ 4.

Sportsmen allege the Game Commission failed to manage the deer herd in accordance with the mandate set forth in Article I, Section 27 of the Pennsylvania Constitution, often referred to as the "Environmental Rights Amendment," which states:

> The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the

---

1. In ruling on preliminary objections, we must accept as true all well-pled material factual allegations, as well as all inferences reasonably deducible from those allegations.

*Wagaman v. Attorney Gen. of the Commonwealth*, 872 A.2d 244 (Pa.Cmwlth.2005). Thus, the following recitation of facts is comprised of those facts averred in the Petition.

common property of all the people, including generations to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

Sportsmen further aver the Game Commission failed to act in accordance with Sections 322(a), (c)(11)-(13) of the Game and Wildlife Code (Game Code), which state, with emphasis added:

### § 322. Powers and duties of commission

(a) **Duties.**—*It shall be the duty of the [Game] [C]ommission to protect, propagate, manage and preserve the game or wildlife* of this Commonwealth and to enforce, by proper actions and proceedings, the laws of this Commonwealth relating thereto.

\* \* \* \*

(c) **Specific powers and duties.**—In order to administrate and enforce this title, *the [Game] [C]ommission through proper action shall:*

\* \* \* \*

(11) *Collect, classify and preserve such statistics, data and information as in its judgment will tend to promote the object of this title* and take charge of and keep all reports, books, papers and documents which shall, in the discharge of its duties, come into its possession or under its control.

(12) Take any necessary action to accomplish and assure the purposes of this title.

(13) Serve the interest of sportsmen by preserving and promoting our special heritage of recreational hunting and furtaking by providing adequate opportunity to hunt and trap the wildlife resources of this Commonwealth.

34 Pa.C.S. § 322(a), (c)(11)-(13). Sportsmen allege, by improperly authorizing the killing of too many antlerless deer, the Game Commission did not comply with its statutory duty to "protect, propagate, manage and preserve the game or wildlife of this Commonwealth," and did not provide an adequate opportunity for Sportsmen to hunt as required by 34 Pa.C.S. § 322(c)(13). As explained below, Sportsmen also allege the Game Commission failed to "[c]ollect, classify and preserve such statistics, data and information as in its judgment will tend to promote the object of this title …" by failing to collect appropriate "reproductive data" for the deer herd. 34 Pa.C.S. § 322(c)(11).

Sportsmen further allege the Game Commission is charged with regulating issuance of antlerless deer licenses under 58 Pa.Code § 143.41, which states, in pertinent part (with emphasis added):

(a) The intent of this section is to ensure a fair and equitable distribution of licenses.

(b) The [Game] Commission, *after reviewing reproductive data*, will establish the number of antlerless deer licenses allocated to each Wildlife Management Unit [(WMU)]. Licenses will be distributed among county treasurers for issuance on the basis of percentage of land each county represents in the unit.

*Id.*

Sportsmen aver, in determining the number and allocation of antlerless deer licenses, the Game Commission relied on insufficient reproductive data because its studies, conducted in 2004–2005, were based on a very small sampling that examined the pregnancy rates of "road killed" deer in each of the Commonwealth's 22 WMUs. Sportsmen allege in 2004–2005 the Game Commission examined only 880 does, which equates to one doe per 42,000 acres in the state. They allege the number of examined deer is too small to be scientifically reliable, and proper data collection would include deer census data

gathered from scientifically reliable surveys, including aerial surveys. Sportsmen thus aver the Game Commission abused its discretion by failing to review and analyze appropriate reproductive data in establishing the number and allocation of antlerless deer permits issued for 2007. They aver the Game Commission's reliance on "reproductive data" collected from road killed deer is not the type of "careful State-wide study" the Game Commission performed in *Lehman v. Pennsylvania Game Commission*, 34 Pa. D.C. 662 (C.P. Dauphin 1938) (common pleas court sitting as Commonwealth Court).

Sportsmen next allege at a meeting in April 2007, the Game Commission voted to approve antlerless deer allocation for the 2007–2008 hunting season. They aver at that meeting the Game Commission issued allocations for each of the states 22 WMUs, totaling 865,000 antlerless deer permits, which is greater than the prior years allocation by 6,000 permits. Sportsmen allege the antlerless deer allocation addressed and approved at the April 2007 meeting was not published in the Pennsylvania Bulletin to properly place the public on notice regarding the allocation.

They also aver the Game Commission did not provide adequate opportunity for public comment regarding the proposed antlerless deer allocation prior to its meeting. Sportsmen allege the Game Commission should have provided adequate public

participation in the antlerless deer allocation in accordance with Section 328(a) of the Game Code, which requires the Game Commission to implement policies and programs to improve its relationship with the public and with its licensees in accordance with its strategic plan. Sportsmen aver the Game Commission has not published or implemented any policies or programs relative to the antlerless deer allocation program in violation of 34 Pa.C.S. § 328(a). *Cf. Pacurariu v. Commonwealth*, 744 A.2d 389 (Pa.Cmwlth.2000) (noting the Game Commission had a policy of seeking public input when deciding location of proposed shooting range).

Sportsmen also aver the Game Commission developed a "Population Management Plan for White–Tailed Deer in Pennsylvania (2003–2007)" (Plan), which it prepared in 2003 and updated in 2006. They allege the annual number of deer killed per season in the 1990s was approximately 390,-000 per year, but since 2000, more than 3 million deer have been killed by hunters.

Sportsmen further allege the Plan indicates Game Commission staff examines less than 40,000 deer taken to deer processors annually to calculate a harvest reporting rate. Sportsmen allege the "total deer kill" data does not properly address the reproductive data to be assessed by the Game Commission pursuant to 58 Pa. Code § 143.41, in determining the number and allocation of antlerless deer licenses.[2]

---

**2.** Sportsmen also point out the Plan sets forth three goals with regard to deer population management: managing for a healthy deer population, with a focus on deer health; reducing deer-human conflicts, principally through the DMAP to allow property owners to "manage" deer on private property; and, managing deer to maintain, and where appropriate restore, the health of the ecosystem, with the focus on habitat health. Sportsmen aver while these goals appear to be good public policy, the problem occurs in the application of these goals. More specifically,

Sportsmen aver the Game Commission focuses too heavily on the goal relating to habitat health, at the behest of Pennsylvania's timber interests.

Sportsmen also aver the Game Commission established a DMAP as set forth in 58 Pa.Code §§ 147.672–147.676. They allege the DMAP allows property owners to enroll property for the purpose of allowing the Game Commission to issue harvest permits that authorize the killing of antlerless deer. Sportsmen aver pursuant to 58 Pa.Code § 147.673(a), owners

Sportsmen allege that requiring the Game Commission to collect appropriate reproductive data to be reviewed pursuant to 58 Pa.Code § 143.41(b), will serve to ensure the proper number and allocation of antlerless deer permits is made, which will in turn ensure the natural and appropriate population of the deer herd is achieved and maintained. Along with collecting and analyzing appropriate reproductive data, Sportsmen aver requiring the Game Commission to assess that data will ensure the allocation of antlerless deer permits does not have the net effect of authorizing the killing of more antlerless deer than the deer herd can naturally sustain.

Based on these averments, Sportsmen ask this Court to grant a permanent injunction to prohibit the killing of antlerless deer on state game and state forest land until the Game Commission completes its collection and analysis of appropriate reproductive data.

Sportsmen allege they have a clear right to relief because the Game Commission abused its discretion with regard to the review of reproductive data that it is required to make as part of its allocation of antlerless deer permits under 58 Pa.Code § 143.41. They aver the Game Commission failed to make the appropriate scientific study with respect to the collection of reproductive data and to properly assess that data.

In addition, they aver the Game Commission abused its discretion with regard to the issuance of antlerless deer harvest permits under the DMAP. In particular, the Game Commission failed to properly consider the net effect of the antlerless deer program coupled with the DMAP on the impact to the deer herd or the appropriate number of antlerless harvest permits issued under the DMAP for each parcel of land enrolled in the DMAP.

They also allege the Game Commission's Plan led to the decimation of the deer herd. They aver the population of the deer herd is well below its natural and appropriate size, as a direct result of the Game Commission's administration of the antlerless deer license and the DMAP programs. Sportsmen allege, if this Court does not grant injunctive relief, the deer herd will be further reduced, allowing the population to fall even further below the natural and appropriate level. They aver the harm to the deer herd cannot be compensated for by monetary damages, and the harm to the deer herd may be irreparable. Sportsmen acknowledge that potential injury may result from granting the requested injunctive relief, but they allege greater injury will result from denying relief. In their prayer for relief, Sportsmen request this Court (with emphasis added):

> a. *Order the [Game Commission] to collect the appropriate reproductive data*

and lessees of private land, as well as officers or employees of political subdivisions or government agencies, may apply to have land enrolled in the DMAP. They allege where material destruction of cultivated crops, fruit trees or vegetables by deer has been or can be documented, one harvest permit may be allocated for every five acres of land, and, on other lands, where such material destruction cannot be documented, a harvest permit may be issued for every 50 acres of land.

Sportsmen aver the practical effect of the DMAP is to allow the killing of antlerless deer

in excess of the level necessary to maintain the health of the deer herd. Sportsmen acknowledge private property owners or lessees may have a legitimate interest in reducing the number of deer on property they farm. They aver the major problem with the DMAP is it allows government agencies, particularly the Department of Conservation and Natural Resources (DCNR), to enroll state forest land in the program, and, as a result, it allows for issuance of DMAP permits to hunters in excess of the allocation of antlerless deer permits under 58 Pa.Code § 143.41.

required to be considered pursuant to 58 Pa.Code [§ ]143.41(b), including but not limited to the collection of aerial survey data.

b. *Order the [Game Commission] to put an immediate halt to the taking of antlerless deer* (female deer i.e. "does") on publicly owned State Game land and State Forest land within the Commonwealth of Pennsylvania, *pending the collection and proper scientific determination of the geographic composition and dispersion of the Pennsylvania deer herd,* to allow for the proper number and allocation of antlerless deer permits for 2007, in accordance with 58 Pa.Code § 143.41(b).

c. *Order the [Game Commission] to put an immediate halt to the taking of deer under the DMAP [ ]* on publicly owned State Forest land *pending the collection and proper scientific determination of the appropriate number of DMAP permits* to be issued on each parcel of property enrolled in the DMAP [ ] for 2007.

Pet. at 15–16.

In response, the Game Commission filed preliminary objections, asserting: the Petition is legally insufficient to state any claim for relief; the Petition lacks sufficient specificity; Sportsmen did not exhaust their administrative remedies; Sportsmen are collaterally estopped from raising the claims in the Petition; and, Sportsmen lack standing. The Game Commission's preliminary objections are now before us for disposition. We reorder the issues for discussion.

## I. Preclusion

### A. Contentions

The Game Commission argues Sportsmen's current Petition is barred by the doctrine of collateral estoppel. It asserts the issue of whether Sportsmen have the right to dictate how the Game Commission manages the Pennsylvania deer herd was already decided by this Court. The Game Commission contends Sportsmen's prior actions resulted in a final judgment on the merits and Sportsmen were a party to the prior actions. It further argues Sportsmen had a full and fair opportunity to litigate the issue in the prior actions. The Game Commission points out in January 2007, this Court dismissed Sportsmen's prior action with prejudice and Sportsmen did not appeal. By filing the current action, the Game Commission asserts, Sportsmen are effectively trying to amend their complaint a third time. While the current Petition contains some allegations about events that occurred after the January 2007 dismissal, the Game Commission argues, all the claims in the present action could have been raised in the prior actions.

### B. Legal Standards

■ Res judicata encompasses two related, yet distinct principles: technical res judicata and collateral estoppel. *Stilp v. Commonwealth,* 910 A.2d 775 (Pa. Cmwlth.2006). Technical res judicata provides that where a final judgment on the merits exists, a future lawsuit on the same cause of action is precluded. *Id.* Collateral estoppel acts to foreclose litigation in a subsequent action where issues of law or fact were actually litigated and necessary to a previous final judgment. *Id.*

■ Technical res judicata requires the coalescence of four factors: (1) identity of the thing sued upon or for; (2) identity of the causes of action; (3) identity of the persons or parties to the action; and (4) identity of the quality or capacity of the parties suing or being sued. *Id.* Res judicata applies to claims that were actually litigated as well as those matters that should have been litigated. *Id.* Generally, causes of action are identical when the

subject matter and the ultimate issues are the same in both the old and new proceedings. *Id.*

■■■■ Similarly, collateral estoppel bars a subsequent lawsuit where (1) an issue decided in a prior action is identical to one presented in a later action, (2) the prior action resulted in a final judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action, and (4), the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action. *Id.*[3]

## C. Prior Pleadings

In *Sportsmen I*, this Court sustained a demurrer to Sportsmen's original complaint because the complaint was so ambiguous we could not discern a legal theory to support the relief requested. However, we declined to dismiss the suit at that time; rather, we afforded Sportsmen the opportunity to file an amended complaint.

Through their amended complaint, Sportsmen alleged the Game Commission acted in derogation of its constitutional and statutory responsibilities in managing Pennsylvania's deer herd and engaged in unlawful activities that were detrimental to the health and viability of the deer herd. They alleged the Game Commission engaged in numerous "unlawful policies and

practices," including: failing to conduct an accurate census of the deer population; providing false information to the public about the buck-to-doe ratio and the effectiveness of antler restrictions; failing to implement a reliable method of calculating the deer population or the number of deer harvested during hunting seasons; and, failing to properly update its deer management plan. Sportsmen further averred, in implementing its programs and policies, the Game Commission "intentionally excluded the public, particularly hunters and sportsmen ... from any decision-making role specifically choosing in violation of state law to avoid the institutionalization of advisory groups although requested by [S]portsmen and other groups for an opportunity to participate in decision-making." *Sportsmen II*, Slip Op. at 4 (citing Am. Compl. At ¶ 9). Sportsmen asked that this Court:

a. Order an immediate halt to the taking of antlerless deer (female deer i.e. "does") in ... Pennsylvania pending a scientific determination of the geographic composition and dispersion of the Pennsylvania deer herd.

b. Order the [Game Commission] to maintain a minimum winter density of 20 deer per square mile in accordance with USDA recommendations.

c. Order the [Game Commission] to immediately cease its current deer herd decimation practices.

---

3. Although collateral estoppel is an affirmative defense that should not be raised by preliminary objection, this procedural irregularity may be waived by failing to formally challenge it by filing preliminary objections to the preliminary objections. *Stilp v. Commonwealth*, 910 A.2d 775 (Pa.Cmwlth.2006). Here, Sportsmen did not formally challenge the procedure by which this issue was raised; as such, we may consider the merits of this objection.

Of further note, there is some authority that indicates a decision on preliminary objections

in a prior case which does not address the merits does not collaterally estoppel a subsequent action. *See Parking Auth. of City of Wilkes–Barre v. Ten East South Street Co.*, 788 A.2d 1096 (Pa.Cmwlth.2001) (bases of preliminary objections in prior action unknown); *In re Pa. Tpk. Comm'n*, 715 A.2d 1219 (Pa. Cmwlth.1998) (preliminary objection to jurisdiction in prior action sustained). However, recent authority indicates preclusion principles can apply where this Court sustains a demurrer to a prior suit on the same issue. *See Stilp.*

d. Order the [Game Commission] to adhere to constitutional and statutory requirements to preserve and protect the deer herd ...

\* \* \* \*

g. Order the [Game Commission] to manage Pennsylvania's deer herd separately on public and private lands and issue unique permits to allow the harvesting of does on state forests and state managed lands.

\* \* \* \*

i. Order the [Game Commission] to organize an institutional framework permitting [Sportsmen] and other hunter/trapper groups to be afforded the opportunity to participate in policy formulation procedures and enjoy access to heretofore secret [Game Commission] information and decision making practices.

\* \* \* \*

*Sportsmen II,* Slip Op. at 4–6 (citing Am. Compl. At pp. 9–10).

In response, the Game Commission again filed a preliminary objection in the nature of a demurrer, which we again sustained, explaining (with emphasis added):

While the relief requested in the Amended Complaint differs from that requested in the original complaint, the Amended Complaint is still legally insufficient *to state a claim for mandamus.* More specifically, Sportsmen do not aver the Game Commission failed to exercise its discretion; rather, they seek to compel the exercise of discretion in a specific manner. Clearly, Sportsmen cannot state a claim in mandamus to compel the Game Commission to exercise its discretion in a particular manner.

*Also, Sportsmen do not aver the Game Commission abused its discretion.* Nevertheless, even if such an averment could be inferred, the arbi-

trary exercise of discretion cannot be corrected through a writ of mandamus.

*The primary pleading deficiency,* however, *is one of causation.* As with the original complaint, the Amended Complaint does not contain averments that any requested action is necessary or that it will protect the deer herd. Indeed, Sportsmen do not aver any of the requested forms of relief are necessary to protect the deer herd. Further, the requests for implementation of a framework to allow for public input and a grievance procedure are not required by the Game Code. Similarly, the Game Commission is not required to *publish* the relevant information contemplated in Section 322I(11) of the Game Code.

In *Sportsmen I,* we provided Sportsmen an opportunity to cure the disconnect between the cited statutory duties and the relief requested. Despite this opportunity, the Amended Complaint still does not include any averments of causation or a relationship between the Game Commission's statutory duties and the relief requested. Because the Amended Complaint lacks any averments that the relief requested will preserve and protect game or provide an adequate opportunity to hunt, and such a causal connection is still not obvious, we sustain the Game Commission's demurrer to Sportsmen's claim for mandamus and dismiss this claim.

*Sportsmen II,* Slip Op. at 9–10 (citations omitted). In addition, we sustained the Game Commission's demurrer to Sportsmen's claim for injunctive relief. Ultimately, we dismissed Sportsmen's amended complaint with prejudice. Sportsmen did not appeal this decision, which constituted a final order. *See Murphy v. Commonwealth, Dep't of Transp.,* 733 A.2d 688 (Pa.Cmwlth.1999) (order sustaining prelim-

inary objections and dismissing complaint is final appealable order).

Eight months later, Sportsmen, represented by new counsel, filed the current Petition. The current Petition is drafted differently than Sportsmen's prior pleadings.

### D. Discussion

■ For the following reasons, the current Petition contains sufficient changes to distinguish it from the claims raised in the prior action, which this Court addressed in *Sportsmen I* and *Sportsmen II*. First, in their prior pleadings Sportsmen attempted to state a claim for mandamus. In the current Petition, Sportsmen plead claims for declaratory and injunctive relief. Second, in their prior pleadings Sportsmen did not allege the Game Commission abused its discretion. In the current Petition, Sportsmen clearly aver the Game Commission abused its discretion. Third, the current Petition references a decision on antlerless deer licenses rendered in April, 2007, a date *after* termination of the prior suit. Fourth, as explained more fully below, the current Petition cured the primary deficiency in the prior pleadings, the lack of a causal connection between the Game Commission's statutory and regulatory duties and the relief requested. This is most evident with respect to the specific statutory duty to take proper action to collect data. Therefore, we overrule this preliminary objection.

### II. Legal Sufficiency of Petition

#### A. Contentions

The Game Commission also asserts, although the Petition does not expressly seek mandamus relief, it does request "other equitable relief" and is asking the Court to mandate the Game Commission act in a particular way in managing the deer population; thus, Sportsmen clearly seek mandamus relief.

Alternatively, the Game Commission argues the Petition does not state a claim for injunctive relief because it does not allege the elements necessary for injunctive relief. It maintains the Petition fails to aver immediate and irreparable harm. In addition, it contends Sportsmen essentially seek a preliminary injunction, but they do not plead the elements to support a preliminary injunction. The Game Commission also asserts it is unlikely Sportsmen will prevail on the merits given that Sportsmen failed on their prior two pleadings.

The Game Commission argues consideration of any claim raised by Sportsmen must begin with recognition of the undisputable facts that Pennsylvania deer belong to the Game Commission as an independent agency of the Commonwealth, controlled and regulated in accordance with the Game Code, and that the Game Commission is vested with exclusive authority to manage the deer population. *See* 34 Pa.C.S. § 322.

The Game Commission further argues there is no liberty or property interest implicated by sport hunting and, as a result, no interest to which due process attaches; rather, the right to hunt is a privilege conferred by the legislature. *See Pa. Game Commn. v. Marich,* 542 Pa. 226, 666 A.2d 253 (1995).

Based on these principles, the Game Commission argues, it owns the deer and possesses exclusive authority to manage them. On the other hand, it maintains that Sportsmen do not own the deer, have no authority to manage them and have no protected interest. The Game Commission therefore asserts that Sportsmen cannot bring a cause of action challenging its deer management decisions.

The Game Commission contends *Lehman* provides a thorough analysis of the issues presented here. It asserts *Lehman* stands for the proposition that ownership, jurisdiction and control of Pennsylvania's deer herd is vested exclusively in the Game Commission, and a reviewing court may not second guess the rationale underlying the Game Commission's decisions involving management of the deer population. The Game Commission further argues its Plan reveals a valid basis for its decisions regarding management of the deer herd and the wisdom of its decision cannot be challenged here.

The Game Commission maintains the issue here is whether Sportsmen can compel it to manage the deer herd in a manner consistent with their desires and to the exclusion of all others. It argues we must resolve this question in its favor. The Game Commission asserts we cannot compel it to exercise its discretionary game management policies in a manner different than what it deems proper.

### B. Legal Standards

■ In their current Petition, Sportsmen do not reference mandamus relief, nor do they argue in favor of such a remedy. Nevertheless, the standards for mandamus and injunctive relief are similar in many important respects. *Rosario v. Beard*, 920 A.2d 931 (Pa.Cmwlth.2007). A party seeking an injunction must establish the right to relief is clear, there is an urgent necessity to avoid an injury which cannot be compensated for by damages and greater injury will result from refusing rather than granting the relief requested. *Id.* Similarly, mandamus is an extraordinary writ, designed to compel a public official's performance of a ministerial act, and may issue only where the petitioner has a clear legal right to enforce the

performance of an act, the defendant has a corresponding duty to perform the act and the petitioner has no other adequate and appropriate remedy. *Id.* Whether a petitioner seeks a writ of mandamus or an injunction, "his threshold burden is to establish a clear legal right to relief." *Id.* at 934.

■ In the current Petition Sportsmen reference declaratory relief, which involves a statutory remedy under the Declaratory Judgments Act.[4] Under 42 Pa.C.S. § 7533, any person whose rights or other legal relations are affected by a statute, such as the Game Code, may have determined any question of construction or validity and obtain a declaration of rights or legal relations thereunder. In order to sustain an action under the Declaratory Judgments Act, a plaintiff must demonstrate an "actual controversy" indicating imminent and inevitable litigation, and a direct, substantial and present interest. *Wagner v. Apollo Gas Co.*, 399 Pa.Super. 323, 582 A.2d 364 (1990).

In reviewing a preliminary objection in the nature of a demurrer, all material facts as set forth in the complaint, as well as all inferences reasonably deducible from those facts, must be accepted as true. *Sportsmen I*. Cognizant of this factual bias in a plaintiffs favor, we must determine whether there is no potentiality of recovery. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it. *Id.* at 124–25.

### C. Discussion

■ Here, it is simply too early to state with certainty that the Petition fails to state any claim for relief. Sportsmen aver the Game Commission violated its duties under the Game Code and applica-

---

4. 42 Pa.C.S. §§ 7531–7541.

ble regulations by failing to collect appropriate data to protect and preserve the deer population.[5]

As to the relief requested, Sportsmen in effect seek a declaratory judgment as to whether the Game Commission is satisfying its express statutory duty to collect data which will promote the objectives of the Game Code, including protecting and preserving the deer herd. If it is determined the Game Commission failed in its statutory and regulatory duties, Sportsmen seek to halt certain practices until the duties are fulfilled.

Unlike the prior pleadings, Sportsmen now identify specific duties based on statute and regulation. They aver violations of those duties, in part by alleging an abuse of discretion in using inappropriate information and data which fail to reveal the true state of the deer herd. Currently, Sportsmen seek remedies connected with the alleged breach of the collection-of-data duty and the preserving the game duty.

Sportsmen state a claim for declaratory relief. They allege a controversy regarding, among other things, data collection and resultant antlerless deer permitting. The Game Commission concedes the controversy with Sportsmen has resulted in repeated litigation. Sportsmen establish a direct, substantial and present interest by virtue of the Game Code's requirement that the Game Commission, through proper action, shall "[s]erve the interest of sportsmen by preserving and promoting our special heritage of recreational hunting...." 34 Pa.C.S. § 322(c)(13).

Similarly, Sportsmen state a claim for injunctive relief. They aver violation of statutory duties to collect data and preserve and promote the heritage of recreational hunting. As discussed above, injunctive relief is based upon such a showing. Violation of an express statutory provision *per se* constitutes irreparable harm for purposes of evaluating the sufficiency of a complaint seeking injunctive relief. *Stilp,* 910 A.2d at 787. Further, Sportsmen aver that the feared harm of deer herd decimation cannot be compensated for as damages and that greater harm will result from denying relief than by granting it. Pet. at ¶¶ 61–69.

In sum, Sportsmen plead cognizable causes of action. We do not decide whether they will ultimately be successful in proving the Game Commission abused its discretion in deciding what data to collect or how to preserve the deer herd.

Further, some comment on *Lehman,* relied on by the Game Commission, is necessary. We conclude that case does not compel a different result at this early

---

5. With regard to the collection of data, Sportsmen aver the Game Commission has a discrete statutory duty to "[c]ollect, classify and preserve such statistics, data and information as in its judgment will tend to promote the object of this title...." 34 Pa.C.S. § 322(c)(11). In addition, Sportsmen aver that, pursuant to regulation, "[t]he [Game] Commission, after reviewing reproductive data, will establish the number of antlerless deer licenses allocated to each wildlife management unit...." 58 Pa.Code § 143.41(b). They allege the Game Commission failed to comply with the duty imposed by Section 322(c)(11) of the Game Code by failing to collect and analyze sufficient and/or appropriate reproductive data. Sportsmen also aver the Game Commission abused its discretion with regard to 58 Pa.Code § 143.41(b) by failing to properly review the appropriate reproductive data in establishing the number of antlerless deer permits to be issued for 2007.

Further, Sportsmen aver that requiring the Game Commission to collect appropriate reproductive data to be reviewed under 58 Pa. Code § 143.41 will serve to ensure the proper number and allocation of antlerless deer licenses is made, which will, in turn, ensure the natural and appropriate population of the deer herd is achieved and maintained.

stage. As we previously explained, in *Lehman* the Game Commission did not prevail on preliminary objections; rather, the Commission was required to offer evidence at a hearing:

> While the principles announced in *Lehman* appear instructive, and may, in fact, ultimately control, it is simply too early to reach such a conclusion. In *Lehman,* the Court considered the evidence presented by the Game Commission and determined its resolution fixing an open season on antlerless deer was based on scientific evidence rather than arbitrary or capricious action. Here, however, in their Complaint, Sportsmen aver the Game Commissions policies and practices are arbitrary [and not based on] scientific evidence. We must accept these averments as true at this stage.

*Sportsmen I*, 903 A.2d at 128.

### III. Specificity

### A. Contentions

The Game Commission also asserts the Petition is fatally flawed because, although Sportsmen claim the Game Commission's decisions led to an unacceptably low deer population level, they do not state what they believe is the current deer population and what they believe is an acceptable population. Without such information, the Game Commission contends, it cannot properly defend this action.

### B. Legal Standards

Pursuant to Pa. R.C.P. No. 1019(a), a complaint shall state, "[t]he material facts on which a cause of action ... is based ... in a concise and summary form." This Rule is satisfied if the allegations in a pleading contain averments of all facts the plaintiff must eventually prove in order to recover, and the averments are sufficiently specific to enable the adverse party to prepare a defense. *Commonwealth ex rel.*

*Pappert v. TAP Pharm. Prods., Inc.,* 868 A.2d 624 (Pa.Cmwlth.2005).

 "Pennsylvania is a fact-pleading jurisdiction. A complaint must therefore not only give the defendant notice of what the plaintiffs' claim is and the grounds upon which it rests, but it must also formulate the issues by summarizing those facts essential to support the claim." *Sevin v. Kelshaw,* 417 Pa.Super. 1, 611 A.2d 1232, 1235 (1992) (citation omitted); *see also Feigley v. Dep't of Corr.,* 872 A.2d 189 (Pa.Cmwlth.2005) (specific averments, rather than mere notice pleading, are required in cases within this Court's original jurisdiction).

 Pa. R.C.P. No. 1028(a)(3) permits a preliminary objection based on insufficient specificity of a pleading. To determine if a pleading is sufficiently specific, a court must ascertain whether the facts alleged are sufficiently specific to enable a defendant to prepare his defense. *Foster v. Peat Marwick Main & Co.,* 138 Pa.Cmwlth. 147, 587 A.2d 382 (1991), *aff'd,* 544 Pa. 387, 676 A.2d 652 (1996). Preliminary objections in the nature of a motion for a more specific pleading raise the sole question of whether the pleading is sufficiently clear to enable the defendant to prepare a defense. *Paz v. Dep't of Corr.,* 135 Pa.Cmwlth. 162, 580 A.2d 452 (1990). Further, in pleading its case, the complaint need not cite evidence but only those facts necessary for the defendant to prepare a defense. *Dep't of Transp. v. Bethlehem Steel Corp.,* 33 Pa.Cmwlth. 1, 380 A.2d 1308 (1977).

 Additionally, in determining whether a particular paragraph in a complaint is stated with the necessary specificity, such paragraph must be read in context with all the allegations in the complaint. Only then can a court determine

whether the defendant is put on adequate notice of the claim against which it must defend. *Yacoub v. Lehigh Valley Med. Assocs.*, 805 A.2d 579 (Pa.Super.2002).

## C. Discussion

 Here, despite the fact Sportsmen do not identify precisely what they consider to be a "natural and sustainable level" for the deer population, when read as a whole, the Petition is sufficiently specific to allow the Game Commission to prepare a defense. Therefore, we overrule the preliminary objection to lack of specificity.

## IV. Failure to Exhaust Administrative Remedies

### A. Contentions

The Game Commission also argues the Petition should be dismissed because Sportsmen did not exhaust their administrative remedies. It maintains, if Sportsmen believe the Game Commission's regulations are inadequate or incomplete, they may file a petition pursuant to 1 Pa.Code § 35.18 with the Commission and request a hearing. The Game Commission argues Sportsmen do not aver that prior to bringing this action they attempted to obtain an administrative hearing. The Game Commission further asserts no final administrative action occurred here so as to give Sportsmen the right of review by this Court.

The Game Commission acknowledges that the Petition alleges the Game Commission failed to provide "adequate" opportunity for public comment regarding the proposed antlerless deer allocation prior to its April 2007 meeting and "failed to properly place the public on notice regarding the 2007–2008 antlerless deer allocation through proper publication of the same." Pet. at ¶ 33. However, it argues, these generic allegations are of no substantive consequence for two reasons.

First, there is no allegation that any notice given by it for public comment did not comport with any specific rule, regulation, or statutory requirement. In addition, Sportsmen do not refer to any requirement that the Game Commission put the public on notice of the antlerless deer allocation for any given year, or that such notice be published.

### B. Legal Standards

 The doctrine requiring exhaustion of administrative remedies preserves the integrity of the administrative process by requiring the administrative agency charged with broad regulatory and remedial powers to address issues within its expertise before judicial review attaches. *LeGrande v. Dep't of Corr.*, 894 A.2d 219 (Pa.Cmwlth.2006). Thus, a court lacks power to act until all administrative remedies are exhausted. *Id.* In addition, "[t]he rule requiring exhaustion of administrative remedies is not intended to set up a procedural obstacle to recovery; the rule should be applied only where the available administrative remedies are adequate with respect to the alleged injury sustained and the relief requested." *Ohio Cas. Group of Ins. Cos. v. Argonaut Ins. Co.*, 514 Pa. 430, 437, 525 A.2d 1195, 1198 (1987).

### C. Discussion

 Despite asserting Sportsmen did not exhaust an available administrative remedy, the Game Commission does not identify a specific remedy Sportsmen may pursue to challenge the Game Commission's deer management policies and practices. Absent such a prescribed remedy, the Game Commission's argument fails.

In addition, 1 Pa.Code § 35.18, cited by the Game Commission, does not provide Sportsmen with an adequate remedy here in light of the allegations in the Petition

and the relief they seek. That provision states (with emphasis added):

> A petition to an agency for the *issuance, amendment, waiver or repeal of a regulation* shall set forth clearly and concisely the interest of the petitioner in the subject matter, the specific regulation, amendment, waiver or repeal requested, and shall cite by appropriate reference the statutory provision or other authority therefor. The petition shall set forth the purpose of, and the facts claimed to constitute the grounds requiring, the regulation, amendment, waiver or repeal. Petitions for the issuance or amendment of a regulation shall incorporate the proposed regulation or amendment.

1 Pa.Code § 35.18. Here, the Petition does not seek issuance, amendment, repeal or waiver of any regulation. Indeed, Sportsmen do not challenge the adequacy or completeness of the Game Commission's regulations. Rather, Sportsmen allege the Game Commission abused its discretion by failing to comply with the cited regulations. Under these circumstances, 1 Pa.

Code § 35.18 does not provide Sportsmen with an adequate, available administrative remedy.[6]

## V. Standing

The Game Commission also argues the Petition should be dismissed because Sportsmen lack standing to bring this suit. Because they do not have an interest in the subject matter of this litigation separate and apart from that of the general public, the Game Commission asserts, Sportsmen lack standing.

Based on a similar complaint, this Court previously held Sportsmen averred sufficient facts to establish standing at the pleading stage. *See Sportsmen I.* More specifically, we determined Sportsmen had standing based on Section 322(c)(13) of the Game Code as well as under the traditional substantial-direct-immediate test. *Id.* Consistent with this holding, we overrule the preliminary objection to lack of standing.[7]

For the foregoing reasons, we overrule the Game Commission's preliminary objections.

---

**6.** Also as to the adequacy of this administrative remedy, at oral argument counsel for the Game Commission declined to confirm the Commission would grant a hearing if Sportsmen requested one.

**7.** In a footnote, the Game Commission argues this case is similar to two decisions reached by state courts in other jurisdictions. *See Sea Pines Ass'n for Prot. of Wildlife, Inc. v. S. Carolina Dep't of Natural Res. & Cmty. Servs. Assocs., Inc.,* 345 S.C. 594, 550 S.E.2d 287 (2001); *In Defense of Deer v. Cleveland Metroparks,* 138 Ohio App.3d 153, 740 N.E.2d 714 (2000). In *Sportsmen I,* however, we rejected the Game Commission's reliance on these cases at the pleading stage, explaining:

> [T]he Supreme Court of South Carolina's decision in [*Sea Pines Ass'n*] and the Court of Appeals of Ohio's decision in [*In Defense of Deer*] do not compel a different result at this stage. In *Sea Pines,* the South Carolina Supreme Court determined certain wildlife protection groups failed to establish stand-

> ing to challenge a state agency's decision to reduce the state's deer herd *based on their failure to present sufficient evidence during the course of a non-jury trial.* Here, however, Respondents seek dismissal at the pleading stage, rendering application of *Sea Pines* problematic.
>
> Moreover, the Court of Appeals of Ohio's decision in *In Defense of Deer* is distinguishable. There, the Ohio Court determined a wildlife protection group lacked standing to bring an action challenging a state agency's grant of a deer management permit to a third-party to authorize the controlled killing of 300 deer. Unlike the association in *In Defense of Deer,* however, here Sportsmen do not seek to enjoin issuance of a permit; rather, they seek the information the Game Commission utilizes in setting deer harvest figures.

*Sportsmen I,* 903 A.2d at 124, n. 4 (emphasis in original).

## *O R D E R*

AND NOW, this 16th day of June, 2008, the preliminary objections filed by the Pennsylvania Game Commission and the Commissioners of the Pennsylvania Game Commission are **OVERRULED,** and Respondents shall file an Answer within thirty (30) days from the date of this order to the Petition for Declaratory Judgment and for Equitable Relief.